**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

| | |
|---|---|
| SPT CHATSWORTH HOLDINGS, L.L.C., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| CHATSWORTH REALTY CORPORATION, | : |
| HFZ 344 WEST 72ND STREET LLC, | : Case No.: 20-cv-8502 |
| HFZ 344 WEST 72ND STREET MEZZ LLC, | : |
| HFZ 344 WEST 72ND STREET HOLDCO | : |
| LLC, HFZ 344 WEST 72ND STREET TWO | : **COMPLAINT** |
| LLC, H F Z CAPITAL GROUP LLC, ZIEL | : |
| FELDMAN AND HELENE FELDMAN, | : |
| | : |
| Defendants. | : |

-----------------------------------------------------------x

Plaintiff SPT Chatsworth Holdings, L.L.C. (the "**Plaintiff**") for its Complaint against Defendants Chatsworth Realty Corporation, HFZ 344 West 72nd Street LLC, HFZ 344 West 72nd Street Mezz LLC, HFZ 344 West 72nd Street Holdco LLC, HFZ 344 West 72nd Street Two LLC, H F Z Capital Group LLC, Ziel Feldman and Helene Feldman (collectively, the "**Defendants**") alleges as follows:

### PARTIES

1.    Plaintiff SPT Chatsworth Holdings, L.L.C. ("**Chatsworth Holdings**") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware and has its principal office at c/o Starwood Property Trust, Inc., 591 West Putnam Avenue, Greenwich, Connecticut 06830.  SPT Real Estate Capital, LLC ("**SPT**") is the sole member of Chatsworth Holdings.

2.    Defendant Chatsworth Realty Corporation ("**Coop Corporation**") is a corporation organized and existing under and by virtue of the laws of the State of New York, and, upon

information and belief, has its principal office at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

3.      Defendant HFZ 344 West 72nd Street LLC ("**Street**", and together with Coop Corporation, "**Senior Borrower**") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, and, upon information and belief, has its principal office at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

4.      Defendant HFZ 344 West 72nd Street Mezz LLC ("**Mezzanine Borrower**") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, and, upon information and belief, has its principal office at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

5.      Defendant HFZ 344 West 72nd Street Holdco LLC ("**Unsecured Borrower**" and together with Senior Borrower and Mezzanine Borrower, the "**Borrowers**") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, and, upon information and belief, has its principal office at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

6.      Defendant HFZ 344 West 72nd Street Two LLC ("**Inventory Borrower**") is a limited liability company organized and existing under and by virtue of the laws of the State of Delaware, and, upon information and belief, has its principal office at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

7.      Defendant H F Z Capital Group LLC ("**HFZ Capital**") is a limited liability company organized and existing under and by virtue of the laws of the State of New York, and,

upon information and belief, has its principal office at 600 Madison Avenue, 15th Floor, New York, New York 10022.

8.     Defendant Ziel Feldman ("**Mr. Feldman**") is a natural person having an address at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

9.     Defendant Helene Feldman ("**Mrs. Feldman**", and together with Mr. Feldman and HFZ Capital, the "**Guarantors**") is a natural person having an address at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) in that this action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees.

11.     Chatsworth Holdings sole member is SPT, whose sole member is a Maryland corporation that maintains its principal place of business at 591 West Putnam Avenue, Greenwich, Connecticut 06830 and, pursuant to 28 U.S.C. § 1332(c), Chatsworth Holdings is a citizen and resident of the States of Connecticut and Maryland.

12.     Based on the Plaintiff's investigation, upon information and belief, none of the Defendants is a citizen or resident of the State of Maryland or the State of Connecticut.

13.     HFZ 344 West 72nd Street Investments LLC ("**HFZ Investments**") is the sole member of the Unsecured Borrower, who is in turn the sole member of the Mezz Borrower, who is in turn the sole member of Street, which is a shareholder in the Coop Corporation.

14.     Upon information and belief, none of the member of HFZ Investments are citizens of the State of Connecticut or the State of Maryland.

15.     Upon information and belief, Mr. and Mrs. Feldman are citizens of the State of New York.

16.     The members of HFZ Capital are Mr. and Mrs. Feldman, and the Feldman Family Trust 2007, which, upon information and belief, is a New York statutory or common law trust.

17.     This Court has personal jurisdiction over the Defendants.

18.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because (i) the Defendants are residents of the State of New York; (ii) the events giving rise to the claims occurred in the Southern District of New York; (iii) the property that is the subject of this action is located in the Southern District of New York; and (iv) Defendants consented to venue before this Court.

## FACTS

### The Senior Loan

19.     Pursuant to that certain Loan Agreement, dated as of December 31, 2012 (the "**Senior Loan Agreement**"),[1] by and among Senior Borrower, HFZ 344 West 72nd Street Owner LLC ("**Street Owner**"), Deutsche Bank Trust Company Americas ("**Deutsche**"), and German American Capital Corporation ("**GACC**"), GACC made a loan to Senior Borrower and Street Owner in the maximum principal amount of $152,000,000.00 (the "**Senior Loan**").

20.     The Senior Loan is evidenced and secured by, inter alia, (i) that certain Consolidated, Amended and Restated Promissory Note 1 dated as of December 31, 2012, in the original principal amount of $93,304,198.62, made by Senior Borrower and Street Owner to and in favor of Deutsche as agent for GACC (the "**Senior Note 1**"); (ii) Promissory Note 2 dated as of December 31, 2012 in the original principal amount of $58,695,801.38, made by Senior Borrower

---

[1]   Due to the voluminous nature of the various loan documents at issue and the fact that Defendants are parties to those agreements, some documents have not been included as exhibits to the Complaint; but copies will be provided or made available for inspection by the Court or Defendants as needed.

and Street Owner to and in favor of Deutsche as agent for GACC (the "**Senior Note 2**", and

together with Senior Note 1, the "**Senior Notes**"); (iii) that certain Consolidated, Amended and

Restated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated

as of December 31, 2012, by Street Owner to and in favor of Deutsche as agent for GACC (the

"**Mortgage**"), encumbering certain real property located as 340-344 West 72nd Street, New York,

New York 10023 (the "**Property**"); and (iv) various other documents executed in connection

therewith (collectively with the Senior Loan Agreement, the Senior Notes and the Coop Pledge (as

hereinafter defined), as amended, restated, replaced, modified, supplemented and assigned, the

"**Senior Loan Documents**").  True and correct copies of the Senior Notes are attached hereto as

**Exhibits 1 and 2.**

      21.    In connection with the Senior Loan, the Guarantor executed that certain Guaranty

dated as of December 31, 2012 (the "**Senior Guaranty**").

      22.    Pursuant to that certain First Omnibus Amendment to Loan Documents dated as of

January 28, 2016, the Senior Loan and Senior Loan Documents were amended to, among other

things, redefine the term "Maturity Date" to mean the earlier to occur of (i) the sale of the last

Unsold Unit, (ii) the Extension Maturity Date,[2] or (iii) such earlier date the final payment of

principal on the Senior Notes becomes due.

      23.    On or about May 2, 2016, (i) Street Owner transferred title to the Property to Coop

Corporation, (ii) Street Owner was released as a Borrower under the Senior Loan (and thus the

Mortgage was released from the Property), (iii) the Property was converted into a housing

cooperative (the "**Cooperative**"), and (iv) Street, as owner of the unsold shares of the Coop

---

[2]   Capitalized terms utilized but not defined herein shall have the meanings ascribed to them in the Loan
    Agreements (as that term is defined herein).

Corporation and the Cooperative housing units allocated thereto (the "**Coop Collateral**"), executed and delivered that certain Pledge and Security Agreement dated as of May 2, 2016 to and in favor of Deutsche as agent for the lender party to the Senior Loan Agreement, encumbering all of Street's right, title and interest in and to the Coop Collateral (as amended, restated, replaced, modified, supplemented and assigned, the "**Coop Pledge**").

24.     On or about September 20, 2016, Starwood Property Mortgage, L.L.C. ("**Starwood**") purchased the Senior Loan and Senior Loan Documents from GACC.

25.     Pursuant to that certain Second Omnibus Amendment to Loan Documents dated as of March 22, 2017, the Senior Loan and Senior Loan Documents were amended to, among other things, redefine the term "Maturity Date" to mean the earlier to occur of (i) the sale of the last Unsold Unit, (ii) the Modified Maturity Date or (iii) such earlier date the final payment of principal on the Senior Notes becomes due.

26.     Pursuant to that certain Third Omnibus Amendment to Senior Loan Documents dated as of September 27, 2018 (the "**Third Senior Omnibus Amendment**"), the Senior Loan and Senior Loan Documents were amended to, among other things, extend the Modified Maturity Date of the Senior Loan to December 31, 2019.  In connection therewith, the Coop Pledge was amended and restated in its entirety.

27.     In connection with the Third Senior Omnibus Amendment, the Guarantors entered into that certain Mandatory Purchase Guaranty dated as of September 27, 2018 (the "**Mandatory Purchase Guaranty**").  A true and correct copy of the Mandatory Purchase Guaranty is attached hereto as **Exhibit 3.**

28.     Pursuant to that certain Allonge for Senior Note 1 dated as of July 26, 2019, that certain Allonge for Senior Note 2 dated as of July 26, 2019 and that certain Assignment and

Assumption of Agreements and Accounts dated as of July 26, 2019, Starwood transferred all of its right, title and interest in and to the Senior Loan and the Senior Loan Documents to SPT.

29.     Pursuant to that certain Omnibus Modification Agreement for Senior Loan, Mezzanine Loan and Unsecured Loan dated as of December 30, 2019 (the "**Final Omnibus Amendment**"), the Senior Loan, Senior Loan Documents and Mandatory Purchase Guaranty were amended to, among other things, (i) extend the Modified Maturity Date of the Senior Loan to January 31, 2020; (ii) amend the defined term "Mandatory Purchase Event of Default" as used in the Mandatory Purchase Guaranty to include (a) the failure of the Senior Borrower to close on the sale of Units 301, 1101 and 1208 (the "**April MPUs**") by January 22, 2020, and (b) the failure to pay the Senior Debt in full by January 31, 2020; and (iii) to amend the defined term "Mandatory Purchase Price Payment Obligation" as used in the Mandatory Purchase Guaranty to include either the purchase of the remaining Unsold Units or the payment in full of the aggregate total of the Designated Value of the Unsold Units.

30.     Pursuant to the Senior Loan Documents, certain shares of the Coop Corporation and Cooperative housing units allocated thereto have been sold by Street and are no longer encumbered by the Coop Pledge.  The shares of the Coop Corporation and Cooperative housing units allocated thereto that remain subject to the Coop Pledge are Units 301, 1101, 1208, SL008/SL009, 1R, TH 2, TH 3, A-6A, TH-Annex, PH-Annex, PH W, PH E, 1F and 001 (collectively, the "**Unsold Units**").

31.     Pursuant to that certain (i) Allonge dated as of October 12, 2020 and (ii) Assignment and Assumption of Agreements and Accounts dated as of October 12, 2020, SPT transferred all of its right, title and interest in and to the Senior Loan and the Senior Loan Documents to Chatsworth Holdings.

**The Mezzanine Loan**

32.     Pursuant to that certain Mezzanine Loan Agreement, dated as of December 31, 2012 (the "**Mezzanine Loan Agreement**"), by and among Mezzanine Borrower and CPUSI SS Securities, LLC ("**CPUSI**"), CPUSI made a loan to Mezzanine Borrower in the maximum principal amount of $50,000,000.00 (the "**Mezzanine Loan**").

33.     The Mezzanine Loan is evidenced and secured by, inter alia, (i) that certain Mezzanine Promissory Note dated as of December 31, 2012 in the original principal amount of $50,000,000.00 (the "**Mezzanine Note**"), (ii) that certain Mezzanine Pledge and Security Agreement dated as of December 31, 2012, encumbering all of Mezzanine Borrower's limited liability company interests in Street (the "**Mezz Pledge**"), and (iii) various other documents executed in connection therewith (collectively with the Mezzanine Loan Agreement, the Mezzanine Note and the Mezz Pledge, as amended, restated, replaced, modified, supplemented and assigned, the "**Mezzanine Loan Documents**").  A true and correct copy of the Mezzanine Note is attached hereto as **Exhibit 4.**

34.     Pursuant to that certain Allonge (Chatsworth) dated as of August 29, 2014, and that certain Assignment and Assumption Agreement (Chatsworth Mezzanine Loan) dated as of August 29, 2014, CPUSI transferred all of its right, title and interest in and to the Mezzanine Loan and the Mezzanine Loan Documents to Starwood.

35.     Pursuant to that certain First Omnibus Amendment to Mezzanine Loan Documents dated as of January 28, 2016, the Mezzanine Loan and Mezzanine Loan Documents were amended to, among other things, redefine the term "Maturity Date" to mean the earlier to occur of (i) the sale of the last Unsold Unit, (ii) the Extension Maturity Date, or (iii) such earlier date the final payment of principal on the Senior Notes becomes due.

36.     Pursuant to that certain Second Omnibus Amendment to Mezzanine Loan Documents dated as of March 22, 2017, the Mezzanine Loan and Mezzanine Loan Documents were amended to, among other things, redefine the term "Maturity Date" to mean the earlier to occur of (i) the sale of the last Unsold Unit, (ii) the Modified Maturity Date or (iii) such earlier date the final payment of principal on the Senior Notes becomes due.

37.     Pursuant to that certain Third Omnibus Amendment to Mezzanine Loan Documents dated as of September 27, 2018, the Mezzanine Loan and Mezzanine Loan Documents were amended to, among other things, extend the Modified Maturity Date of the Mezzanine Loan to December 31, 2019.

38.     Pursuant to that certain (i) Allonge dated as of July 26, 2019 and (ii) Assignment and Assumption of Agreements and Accounts dated as of July 26, 2019, Starwood transferred all of its right, title and interest in and to the Mezzanine Loan and the Mezzanine Loan Documents to SPT.

39.     Pursuant to the Final Omnibus Amendment, the Mezzanine Loan and Mezzanine Loan Documents were amended to, among other things, extend the Modified Maturity Date of the Mezzanine Loan to January 31, 2020.

40.     Pursuant to that certain (i) Allonge dated as of October 12, 2020 and (ii) Assignment and Assumption of Agreements and Accounts dated as of October 12, 2020, SPT transferred all of its right, title and interest in and to the Mezzanine Loan and the Mezzanine Loan Documents to Chatsworth Holdings.

**The Unsecured Loan**

41.     Pursuant to that certain Unsecured Loan Agreement, dated as of March 22, 2017 (the "**Unsecured Loan Agreement**" and together with the Senior Loan Agreement and the

Mezzanine Loan Agreement, the "**Loan Agreements**"), Starwood made a loan to Unsecured Borrower in the maximum principal amount of $12,000,000.00 (the "**Unsecured Loan**" and together with the Senior Loan and Mezzanine Loan, the "**Loans**").

42.     The Unsecured Loan is evidenced and secured by, inter alia, (i) that certain Unsecured Loan Promissory Note dated as of March 22, 2017 in the original principal amount of $12,000,000.00 (the "**Unsecured Note**"), (ii) that certain Pledge and Security Agreement dated as of March 22, 2017, encumbering all of Street's unsold shares of the Coop Corporation and the Cooperative housing units allocated thereto (the "**Unsecured Pledge**"), and (iii) various other documents executed in connection therewith (collectively with the Unsecured Loan Agreement, the Unsecured Note and the Unsecured Pledge, as amended, restated, replaced, modified, supplemented and assigned, the "**Unsecured Loan Documents**").  A true and correct copy of the Unsecured Note is attached hereto as **Exhibit 5.**

43.     In connection with the Unsecured Loan, the Guarantors executed that certain Guaranty dated as of March 22, 2017 (the "**Unsecured Guaranty**").  A true and correct copy of the Unsecured Guaranty is attached hereto as **Exhibit 6.**

44.     Pursuant to that certain Omnibus Amendment to Unsecured Loan Documents dated as of September 27, 2018, the Unsecured Loan and Unsecured Loan Documents were amended to, among other things, extend the Maturity Date of the Unsecured Loan.  In connection therewith, the Unsecured Pledge was also amended and restated in its entirety.

45.     Pursuant to that certain (i) Allonge dated as of July 26, 2019 and (ii) Assignment and Assumption of Agreements and Accounts dated as of July 26, 2019, Starwood transferred all of its right, title and interest in and to the Unsecured Loan and the Unsecured Loan Documents to SPT.

46.     Pursuant to the Final Omnibus Amendment, the Unsecured Loan and Unsecured Loan Documents were amended to, among other things, extend the Maturity Date of the Unsecured Loan to January 31, 2020.

47.     Pursuant to that certain (i) Allonge dated as of October 12, 2020 and (ii) Assignment and Assumption of Agreements and Accounts dated as of October 12, 2020, SPT transferred all of its right, title and interest in and to the Unsecured Loan and the Unsecured Loan Documents to Chatsworth Holdings.

**The Defaults**

48.     Each of the Loan Agreements, as amended, identifies the maturity date of each of the Loans as January 31, 2020.

49.     Senior Borrower failed to pay the outstanding balance on the Senior Loan on or before January 31, 2020 (the "**Senior Maturity Default**") and, pursuant to Section 8.1(a)(i) of the Senior Loan Agreement, that failure constituted an Event of Default under the Senior Loan Documents.

50.     Mezzanine Borrower failed to pay the outstanding balance on the Mezzanine Loan on or before January 31, 2020 (the "**Mezz Maturity Default**") and, pursuant to Section 8.1(a)(i) of the Mezzanine Loan Agreement, that failure constituted an Event of Default under the Mezzanine Loan Documents.

51.     Unsecured Borrower failed to pay the outstanding balance on the Unsecured Loan on or before January 31, 2020 (the "**Unsecured Maturity Default**" and together with the Senior Maturity Default and the Mezz Maturity Default, the "**Maturity Defaults**") and, pursuant to Section 8.1(a)(i) of the Unsecured Loan Agreement, that failure constituted an Event of Default under the Unsecured Loan Documents.

52.     The Senior Borrower failed to close on the sale of the April MPUs by January 22, 2020 (the "**MPU Default**").

53.     As a result of the existence of the Maturity Defaults and the MPU Default, the parties agreed to and did enter into that certain Forbearance Agreement for Senior Loan, Mezzanine Loan, Unsecured Loan and Inventory Loan dated August 17, 2020 (the "**Forbearance Agreement**"), under which Plaintiff agreed to forbear from exercising any rights and remedies related to the Maturity Defaults and the MPU Default in exchange for the Borrowers agreement to, among other things, remit various installment payments totaling $9.1 million between August 17, 2020 and October 28, 2020.

54.     The first installment under the Forbearance Agreement, in the amount of $1 million was due on August 17, 2020, and the second installment, in the amount of $2 million, was due on August 24, 2020.

55.     The failure to make an installment payment within three (3) business days of the date it was due constituted a default under the Forbearance Agreement, resulting in the immediate termination of the Forbearance Agreement without notice and automatically triggering Guarantors' obligations under the Mandatory Purchase Guaranty without further notice or demand.

56.     On August 28, 2020, eleven days after the first installment was due, Borrowers remitted $150,000 to Plaintiff.

57.     On August 31, 2020, two weeks after the first installment was due, Borrowers remitted an additional $350,000 to Plaintiff.

58.     On September 1, 2020, in an attempt to convince Plaintiff that the balance of funds for the past due payments under the Forbearance Agreement were forthcoming, Nir Meir, the Managing Principal of HFZ Capital, provided Plaintiff with a Federal Reference Number,

20200901B6B7261F004531, which was alleged to be related to a wire transfer of funds.  No funds were ever received by Plaintiff.

59.     The following day, on September 2, 2020, Mr. Meir provided a different Federal Reference Number, 20200902B6B7261F001412, under the guise that funds were forthcoming. No funds were ever received by Plaintiff.

60.     In addition to failing to timely remit funds and misleading Plaintiff about the first two installment payments, Borrowers also failed to pay Plaintiff's attorneys' fees at the time the Forbearance Agreement was executed, as was required by Section 3.5 of the Forbearance Agreement.

61.     By letter dated September 4, 2020, Borrowers' counsel was notified that a default had occurred under the terms of the Forbearance Agreement as a result of the Borrowers failure to pay in full (i) the first installment that was due on August 17, 2020, or within three (3) Business Days thereafter, as required under Section 3.3 of the Forbearance Agreement; (ii) the second installment of $2 million within three (3) Business Days of the date due as required under Section 3.3. of the Forbearance Agreement; and (iii) the Lender's attorneys' fees as required by Section 3.5 of the Forbearance Agreement.

62.     Based on those defaults, the Forbearance Agreement automatically terminated by its own terms, and Plaintiff was thereafter entitled to pursue all rights and remedies available under the Loan Documents based on the existence of certain Events of Default.

**Demands on the Borrowers and Guarantors**

63.     By letters dated September 4, 2020 (collectively, the "**Default Notices**"), Senior Borrower, Mezzanine Borrower and Unsecured Borrower were each provided written notice of the existence of certain Events of Default, including but not limited to the Maturity Defaults.  True

and correct copies of each of the Default Notices are attached hereto as **Exhibits 7 through 9,** respectively.

64.     Despite the demand for payment, Senior Borrower has failed to pay the Senior Loan in full and remains in default under the terms of the Senior Loan Documents.

65.     Despite the demand for payment, Mezzanine Borrower has failed to pay the Mezzanine Loan in full and remains in default under the terms of the Mezzanine Loan Documents.

66.     Despite the demand for payment, Unsecured Borrower has failed to pay the Unsecured Loan in full and remains in default under the terms of the Unsecured Loan Documents.

67.     In accordance with Section 1.4 of the Mandatory Purchase Guaranty and based upon the existence of the Maturity Defaults, by letter dated September 4, 2020, Plaintiff also made demand upon the Guarantors for the purchase of all Unsold Units or the payment in full of the aggregate total of the Designated Value of the remaining Unsold Units (the "**Mandatory Purchase Guaranty Demand**").  A true and correct copy of the Mandatory Purchase Guaranty Demand is attached hereto as **Exhibit 10.**

68.     More than thirty (30) days have passed since Plaintiff's written demand, and Guarantors have failed and refused to purchase the Unsold Units or pay the amounts due and owing under the Mandatory Purchase Guaranty.

69.     In accordance with Section 2(b) of the Unsecured Guaranty and based upon the existence of the Maturity Defaults, by letter dated September 11, 2020, Plaintiff made demand upon the Guarantors for the payment of all amounts due and owing under the Unsecured Loan Documents (the "**Unsecured Guaranty Demand**").  A true and correct copy of the Unsecured Guaranty Demand is attached hereto as **Exhibit 11.**

14

70.     More than ten (10) days have passed since Plaintiff's written demand, and Guarantors have failed and refused to pay the amounts due and owing under the Unsecured Loan Documents.

**The Inventory Loan and Default**

71.     Pursuant to that certain Inventory Loan Agreement, dated as of September 27, 2018 (the "**Inventory Loan Agreement**"), by and between Inventory Borrower and Starwood, Starwood made a loan to Inventory Borrower in the maximum principal amount of $130,207,000.00 (the "**Inventory Loan**").

72.     The Inventory Loan is evidenced and secured by, inter alia, (i) that certain Inventory Loan Promissory Note dated as of September 27, 2018 in the original principal amount of $130,207,000.00, made by Inventory Borrower to and in favor of Starwood (the "**Inventory Note**"), and (ii) various other documents executed in connection therewith (collectively with the Inventory Loan Agreement, the Inventory Note and the Inventory Pledges (as hereinafter defined), as amended, restated, replaced, modified, supplemented and assigned, the "**Inventory Loan Documents**").  A true and correct copy of the Inventory Note is attached hereto as **Exhibit 12.**

73.     In connection with the Inventory Loan, the Guarantors executed that certain Inventory Loan Guaranty dated as of September 27, 2018 (the "**Inventory Guaranty**").  A true and correct copy of the Inventory Guaranty is attached hereto as **Exhibit 13.**

74.     From January 11, 2019 until November 22, 2019, proceeds from the Inventory Loan were used to purchase from Street certain shares of the Coop Corporation and Cooperative housing units allocated thereto (the "**Inventory Coop Collateral**"), and in connection therewith various documents entitled "Inventory Pledge and Security Agreement" were executed by Inventory

Borrower in connection therewith encumbering all of Inventory Borrower's right, title and interest in and to the Inventory Coop Collateral (collectively, the "**Inventory Pledges**").

75.     Pursuant to the Inventory Loan Documents, certain shares of the Coop Corporation and Cooperative housing units allocated thereto related to Units 909, 908, 1204, 508, 1106, 409, 609, 4G (a/k/a 402), A-3A, A-4A, TH 4 are subject to the Inventory Pledges.

76.     Pursuant to that certain Allonge dated as of July 26, 2019 and that certain Assignment and Assumption of Agreements and Accounts dated as of July 26, 2019, Starwood transferred all of its right, title and interest in and to the Inventory Loan and the Inventory Loan Documents to SPT.

77.     Pursuant to that certain (i) Allonge dated as of October 12, 2020 and (ii) Assignment and Assumption of Agreements and Accounts dated as of October 12, 2020, SPT transferred all of its right, title and interest in and to the Inventory Loan and the Inventory Loan Documents to Chatsworth Holdings.

78.     Inventory Borrower failed to remit the Debt Service due on or before October 1, 2020 as required by Section 2.2 of the Inventory Loan Agreement.

79.     By letter dated October 2, 2020, Inventory Borrower was provided written notice that it was in default under the terms of the Inventory Loan Documents and was given five (5) business days in which to remit the funds necessary to cure the default.

80.     Inventory Borrower failed to cure the default and remains in default under the terms of the Inventory Loan Documents, and, pursuant to Section 8.1(a)(i) of the Inventory Loan Agreement, that failure constituted an Event of Default under the Inventory Loan Documents (the "**Inventory Default**").

81.     By letter dated October 13, 2020, Inventory Borrower was provided written notice that the Maturity Date of the Inventory Loan had been accelerated as a result of the Inventory Default (the "**Inventory Default Notice**").  A true and correct copy of the Inventory Default Notice is attached hereto as **Exhibit 14**.

82.     By letter dated October 13, 2020, the Guarantors were provided written notice that their obligations under the Inventory Guaranty had arisen as a result of the Inventory Default (the "**Inventory Guaranty Demand**").  A true and correct copy of the Inventory Guaranty Demand is attached hereto as **Exhibit 15**.

## FIRST CAUSE OF ACTION
(Judgment on the Senior Notes - Senior Borrower)

83.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

84.     The Senior Notes and Senior Loan Agreement are valid and enforceable agreements executed by the Senior Borrower in favor of Plaintiff.

85.     Pursuant to the terms of the Senior Loan Agreement, the Senior Loan, the Mezzanine Loan and the Unsecured Loan are cross-defaulted.

86.     The Senior Maturity Default constitutes an Event of Default under the Senior Loan Documents.

87.     Both the Mezz Maturity Default and the Unsecured Maturity Default constitute Events of Default under the Senior Loan Documents.

88.     By virtue of the foregoing Events of Default, the outstanding principal balance of the Senior Loan, all accrued and unpaid interest thereon and all other sums owing under the Senior Loan Documents are currently due and payable.

89.     Pursuant to the Senior Loan Documents and applicable law, the unpaid balance of Senior Borrower's obligations under the Senior Loan Documents, calculated through September 30, 2020, totals more than $77,067,760.02, and includes the unpaid principal amount of $49,148,800.11, unpaid interest in the amount of $2,786,992.96, default interest in the amount of $2,251,797.20, late fees in the amount of $73,826.27, the Modified PIK Interest Balance of $19,184,190.15, Interest at the PIK Interest Rate in the amount of $1,722,153.33 and the Secondary Exit Fee in the amount of $1,900,000.00.  Attorneys' fees and costs, expenses, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue.  Interest continues to accrue at the Default Rate, as that term is defined in the Senior Loan Agreement.

90.     Despite demand for payment, Senior Borrower has failed and refused to repay the Senior Loan in full.

91.     Senior Borrower has failed to perform under the terms of the Senior Loan Documents.

92.     In order to protect its security, Plaintiff may be compelled during the pendency of this action to pay charges affecting the Property.  Plaintiff requests that any sums paid by it for said purposes, together with interest thereon and any other amounts due under the Loan Documents as a result thereof, be added to the sums otherwise due under the Loan Documents.

93.     All conditions precedent necessary to bring forth the claim(s) set forth herein have been satisfied.

### SECOND CAUSE OF ACTION
(Judgment on the Mezz Note - Mezzanine Borrower)

94.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

95.     The Mezzanine Note and Mezzanine Loan Agreement are valid and enforceable agreements executed by the Mezzanine Borrower in favor of Chatsworth Holdings.

96.     Pursuant to the terms of the Mezzanine Loan Agreement, the Senior Loan, Mezzanine Loan and Unsecured Loan are cross-defaulted.

97.     The Mezz Maturity Default constitutes an Event of Default under the Mezzanine Loan Documents.

98.     Both the Senior Maturity Default and the Unsecured Maturity Default constitute Events of Default under the Mezzanine Loan Documents.

99.     By virtue of the foregoing Events of Default, the outstanding principal balance of the Mezzanine Loan, all accrued and unpaid interest thereon and all other sums owing under the Mezzanine Loan Documents are currently due and payable.

100.    Pursuant to the Mezzanine Loan Documents and applicable law, the unpaid balance of Mezzanine Borrower's obligations under the Mezzanine Loan Documents, calculated through September 30, 2020, totals more than $39,236,877.19, and includes the unpaid principal amount of $16,167,368.57, interest in the amount of $816,755.64, default interest in the amount of $740,722.75, late fees in the amount of $16,227.46, the Modified PIK Interest Balance of $20,870,802.77 and the Secondary Exit Fee in the amount of $625,000.00.  Attorneys' fees and costs, expenses, and other amounts due and owing pursuant to the Loan Documents and applicable law continue to accrue.  Interest continues to accrue at the Default Rate, as that term is defined n the Mezzanine Loan Agreement.

101.    Despite demand for payment, Mezzanine Borrower has failed and refused to repay the Mezzanine Loan in full.

102.    Mezzanine Borrower has failed to perform under the terms of the Mezzanine Loan Documents.

103.    All conditions precedent necessary to bring forth the claim(s) set forth herein have been satisfied.

### THIRD CAUSE OF ACTION
(Judgment on the Unsecured Note – Unsecured Borrower)

104.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

105.    The Unsecured Note and Unsecured Loan Agreement are valid and enforceable agreements executed by the Unsecured Borrower in favor of Plaintiff.

106.    Pursuant to the terms of the Unsecured Loan Agreement, the Senior Loan, Mezzanine Loan and Unsecured Loan are cross-defaulted.

107.    The Unsecured Maturity Default constitutes an Event of Default under the Unsecured Loan Documents.

108.    Both the Senior Maturity Default and the Mezz Maturity Default constitute Events of Default under the Unsecured Loan Documents.

109.    By virtue of the foregoing Events of Default, the outstanding principal balance of the Unsecured Loan, all accrued and unpaid interest thereon and all other sums owing under the Unsecured Loan Documents are currently due and payable.

110.    Pursuant to the Unsecured Loan Documents and applicable law, the unpaid balance of Unsecured Borrower's obligations under the Unsecured Loan Documents, calculated through September 30, 2020, totals more than $9,769,953.58, and includes the unpaid principal amount of $8,890,914.29, interest in the amount of $638,984.60 and default interest in the amount of $240,054.69. Attorneys' fees and costs, expenses, and other amounts due and owing pursuant to

the Loan Documents and applicable law continue to accrue.  Interest continues to accrue at the Default Rate, as that term is defined in the Unsecured Loan Agreement.

111.    Despite demand for payment, Unsecured Borrower has failed and refused to repay the Unsecured Loan in full.

112.    Unsecured Borrower has failed to perform under the terms of the Unsecured Loan Documents.

113.    All conditions precedent necessary to bring forth the claim(s) set forth herein have been satisfied.

### FOURTH CAUSE OF ACTION
(Judgment on the Inventory Note – Inventory Borrower)

114.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

115.    The Inventory Note and Inventory Loan Agreement are valid and enforceable agreements executed by the Inventory Borrower in favor of Plaintiff.

116.    The Inventory Default constitutes an Event of Default under the Inventory Loan Documents.

117.    By virtue of the foregoing Event of Default, the outstanding principal balance of the Inventory Loan, all accrued and unpaid interest thereon and all other sums owing under the Inventory Loan Documents are currently due and payable.

118.    Pursuant to the Inventory Loan Documents and applicable law, the unpaid balance of Inventory Borrower's obligations under the Inventory Loan Documents, calculated through October 1, 2020, totals more than $30,945,265.75, and includes the unpaid principal amount of $30,873,515.70, interest in the amount of $68,333.38 and late fees in the amount of $3,416.67. Attorneys' fees and costs, expenses, and other amounts due and owing pursuant to the Inventory

Loan Documents and applicable law continue to accrue.  Interest continues to accrue at the Default

Rate, as that term is defined int the Inventory Loan Agreement.

119.    Despite demand for payment, Inventory Borrower has failed and refused to repay

the Inventory Loan in full.

120.    Inventory Borrower has failed to perform under the terms of the Inventory Loan

Documents.

121.    All conditions precedent necessary to bring forth the claim(s) set forth herein have

been satisfied.

**FIFTH CAUSE OF ACTION**
(Breach of Mandatory Purchase Guaranty – All Guarantors)

122.    Plaintiff repeats and realleges the allegations contained in each of the preceding

paragraphs as if fully set forth herein.

123.    The Mandatory Purchase Guaranty is a valid and enforceable guaranty agreement

executed by the Guarantors in favor of Plaintiff.

124.    Under Section 1.1(a) of the Mandatory Purchase Guaranty, the Guarantors

"absolutely, irrevocably and unconditionally" guaranteed the "payment and performance of the

Guaranteed Obligations … as and when the same shall be due and payable, whether by lapse of

time, by acceleration of maturity or otherwise."

125.    The Mandatory Guaranty defines "Guaranteed Obligations" as the "Mandatory

Purchase Price Payment Obligation" which, as amended, includes the purchase of all remaining

Unsold Units or the payment in full of the aggregate total of the Designated Value of all of the

Unsold Units upon the occurrence of a Mandatory Purchase Event of Default.

126.    Pursuant to the Mandatory Purchase Guaranty, as amended by the Final Omnibus

Amendment, a Mandatory Purchase Event of Default occurred by virtue of each of the following:

(i) Senior Borrower's failure to pay the outstanding principal balance of the Senior Notes, together with all accrued and unpaid interest thereon and all other sums due under the Senior Loan Documents, on January 31, 2020; and (ii) Senior Borrower's failure to close on the sale of the April MPUs by January 22, 2020.

127.    In accordance with the terms of Section 1.4 of the Mandatory Purchase Guaranty, by letter dated September 4, 2020, Plaintiff made demand upon the Guarantors to (i) cause the purchase all of the Unsold Units; or (ii) pay in full, in the order and priority set forth in Section 7.4 of the Senior Loan Agreement, the aggregate total of the Designated Value of the Unsold Units.

128.    More than thirty (30) days have passed since Plaintiff's written demand, and Guarantors have failed and refused to pay or perform their obligations under the Mandatory Purchase Guaranty.

129.    The aggregate total of the Designated Value of the Unsold Units is $98,178,163.

130.    The amounts owing under the Mandatory Purchase Guaranty remain unpaid.

131.    The Guarantors have failed to perform under the terms of the Mandatory Purchase Guaranty.

132.    Section 1.7 of the Mandatory Purchase Guaranty renders the Guarantors personally liable for all costs, fees and expenses, including attorneys' fees, incurred by Plainitff as a result of the Guarantors' breach and failure to timely perform their obligations under the Mandatory Purchase Guaranty.

133.    Section 6.14 of the Mandatory Purchase Guaranty provides that each of the Guarantors is jointly and severally liable for the obligations contained in the Mandatory Purchase Guaranty.

## SIXTH CAUSE OF ACTION
### (Breach of Unsecured Guaranty – All Guarantors)

134.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

135.    The Unsecured Guaranty is a valid and enforceable guaranty agreement executed by the Guarantors in favor of Plaintiff.

136.    Under Section 1 of the Unsecured Guaranty, the Guarantors "jointly and severally, unconditionally, absolutely and irrevocably" guaranteed the "punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, and the punctual performance of the Guaranteed Obligations" which includes the payment of all amounts due and owing under the Unsecured Loan Documents.

137.    In accordance with the terms of Section 2(b) of the Unsecured Guaranty, by letter dated September 11, 2020, Plaintiff made demand upon the Guarantors for the payment of all amounts due and owing under the Unsecured Loan Documents based upon the existence of the Maturity Defaults.

138.    More than ten (10) days have passed since Plaintiff's written demand, and Guarantors have failed and refused to pay the amounts due and owing under the Unsecured Loan Documents.

139.    Pursuant to the Unsecured Loan Documents and applicable law, the unpaid balance of Unsecured Borrower's obligations under the Unsecured Loan Documents, calculated through September 30, 2020, totals more than $9,769,953.58.  Interest, attorneys' fees, costs and expenses continue to accrue.

140.    The amounts owing under the Unsecured Guaranty remain unpaid.

141.    The Guarantors have failed to perform under the terms of the Unsecured Guaranty.

142.     Section 10 of the Unsecured Guaranty renders the Guarantors personally liable for all costs, fees and expenses, including attorneys' fees, incurred by Plaintiff as a result of the Guarantors' breach and failure to timely perform their obligations under the Unsecured Guaranty.

143.     Section 7 of the Unsecured Guaranty provides that each of the Guarantors is jointly and severally liable for the obligations contained in the Unsecured Guaranty.

### SEVENTH CAUSE OF ACTION
(Breach of Inventory Guaranty – All Guarantors)

144.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as if fully set forth herein.

145.     The Inventory Guaranty is a valid and enforceable guaranty agreement executed by the Guarantors in favor of Plaintiff.

146.     Pursuant to the Inventory Loan Documents and applicable law, the unpaid balance of Inventory Borrower's obligations under the Inventory Loan Documents, calculated through October 1, 2020, totals more than $30,945,265.75.  Interest at the default rate, attorneys' fees, costs and expenses continue to accrue.

147.     The amounts owing under the Inventory Guaranty remain unpaid.

148.     Under Section 1.1 of the Inventory Guaranty, the Guarantors "absolutely, irrevocably and unconditionally" guaranteed the "the payment and performance of all of Borrower's payment and other monetary obligations under the Loan Documents as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise . . . as a primary obligor."

149.     In accordance with the terms of Section 1.4 of the Inventory Guaranty, by letter dated October 13, 2020, Plaintiff made demand upon the Guarantors for the payment of all amounts due and owing under the Inventory Loan Documents.

150.    Section 1.7 of the Inventory Guaranty renders the Guarantors personally liable for all costs, fees and expenses, including attorneys' fees, incurred by Plaintiff as a result of the Guarantors' breach and failure to timely perform their obligations under the Inventory Guaranty.

151.    Section 6.14 of the Inventory Guaranty provides that each of the Guarantors is jointly and severally liable for the obligations contained in the Inventory Guaranty.

**WHEREFORE**, Plaintiff respectfully requests:

(a)    That judgment be entered against the Senior Borrower in favor of Plaintiff in the amount of not less than $77,067,760.02, plus interest from October 1, 2020 through the date of judgment at the Default Rate; and that Plaintiff may have such other and further relief as may be just and equitable;

(b)    That judgment be entered against the Mezzanine Borrower in favor of Plaintiff in the amount of not less than $39,236,877.19, plus interest from October 1, 2020 through the date of judgment at the Default Rate of 12%; and that Plaintiff may have such other and further relief as may be just and equitable;

(c)    That judgment be entered against the Unsecured Borrower in favor of Plaintiff in the amount of not less than $9,769,953.58, plus interest from October 1, 2020 through the date of judgment at the Default Rate; and that Plaintiff may have such other and further relief as may be just and equitable;

(d)    That judgment be entered against the Inventory Borrower in favor of Plaintiff in the amount of not less than $30,945,265.75, plus interest from October 1, 2020 through the date of judgment at the Default Rate; and that Plaintiff may have such other and further relief as may be just and equitable;

(e)     That judgment be entered, jointly and severally, against the Guarantors in favor of Plaintiff in the amount of $98,178,163 plus all costs of collection, including but not limited to attorneys' fees, with respect to the Mandatory Purchase Guaranty;

(f)     That judgment be entered, jointly and severally, against the Guarantors in favor of Plaintiff in the amount of not less than $9,769,953.58 plus default interest and all costs of collection, including but not limited to attorneys' fees, with respect to the Unsecured Guaranty;

(g)     That judgment be entered, jointly and severally, against the Guarantors in favor of Plaintiff in the amount of not less than $30,945,265.75 plus default interest and all costs of collection, including but not limited to attorneys' fees, with respect to the Inventory Guaranty;

(h)     Plaintiff's costs and disbursements of this action, including attorneys' fees; and

(i)     Such other and further relief as the Court may deem just and proper.

Dated: October 13, 2020          VENABLE LLP
New York, New York

                  By:    */s/ Gregory A. Cross*
                        Gregory A. Cross
                        Heather Deans Foley (to be admitted *pro hac vice*)
                        Venable LLP
                        750 East Pratt Street, Suite 900
                        Baltimore, Maryland 21202
                        Telephone: (410) 244-7400

                        -and-

                        Adam Possidente
                        Venable LLP
                        Rockefeller Center
                        1270 Avenue of the Americas, 24th Floor
                        New York, New York 10020
                        Telephone: (212) 307-5500

                        *Counsel for Plaintiff*