# EXHIBIT 18-4

earns from serving as Independent Director or Independent Manager of affiliates of Borrower in any given year constitute in the aggregate less than five percent (5%) of such individual's annual income for that year.

A natural person who satisfies the foregoing definition other than <u>clause (ii)</u> shall not be disqualified from serving as an Independent Director or Independent Manager of Borrower or its sole member (as applicable) if such individual is an independent director, independent manager or special manager provided by a Nationally Recognized Service Company that provides professional independent directors, independent managers and special managers and also provides other corporate services in the ordinary course of its business.

"**Nationally Recognized Service Company**" shall mean any of CT Corporation, Corporation Service Company, National Registered Agents, Inc., Wilmington Trust Company or such other nationally recognized company that provides independent director, independent manager or independent member services and that is satisfactory to Lender, in each case that is not an Affiliate of Borrower or its sole member (as applicable) and that provides professional independent directors and other corporate services in the ordinary course of its business.

21046904-v11

SPTChatsworth007724

## SCHEDULE III

## Qualifications to Representations and Warranties

A.    Loan Agreement:

1.    With respect to Section 4.1.11, the representations set forth therein are each modified to add the qualification that none of the violations are other than ordinary course violations arising in the course of construction which are being resolved and/or disputed in a commercially reasonable manner and, which individually or in the aggregate, would reasonably be expected to materially and adversely affect Borrower or the Property or the ability to own, operate, or market or sell Units to the public.

2.    The last sentence in Section 4.1.24 is qualified to the extent that any claims made under any Policy have been disclosed in writing to Lender on or prior to the date hereof. Additionally, the representations in Section 4.1.24 regarding claims are each qualified to take account of the matters disclosed on the attached Schedule of Client Losses.

B.    Inventory Loan Pledge Agreement:

1.    With respect to Section 4(b), the representations set forth therein are each modified to add the qualification that an adverse finding or ruling in any one of the pending or threatened litigations will not have a material adverse effect on the Corporation, Pledgor or Collateral (as such terms are defined in the Inventory Loan Pledge Agreement). Additionally, the representations in Section 4(b) regarding litigation are each qualified to take account of the matters disclosed on the attached Supplemental Litigation Schedule.

C.    Springing Pledge Agreement:

1.    With respect to Section 4(b), the representations set forth therein are each modified to add the qualification that an adverse finding or ruling in any one of the pending or threatened litigations will not have a material adverse effect on the Corporation, Senior Borrower, Mezzanine Borrower, Unsecured Borrower, Pledgor or Collateral (as such terms are defined in the Springing Pledge Agreement). Additionally, the representations in Section 4(b) regarding litigation are each qualified to take account of the matters disclosed on the attached Supplemental Litigation Schedule.

21046904-v11

SPTChatsworth007725

## SUPPLEMENTAL LITIGATION SCHEDULE

## LITIGATION INVOLVING HFZ CAPITAL GROUP, ZIEL FELDMAN OR HELENE FELDMAN:

1. *E. Glenn Hadden and Susanna Hadden v.  40 Broad LLC, HFZ Capital Group, LLC, HFZ 40 Broad Street, LLC, and Board of Managers of the Setai Condominium Residences*:

On or about October 7, 2011, E. Glenn Hadden and Susanna Hadden (collectively, "Hadden"), filed an action in New York State Supreme Court against 40 Broad LLC, HFZ Capital Group, LLC, HFZ 40 Broad Street, LLC, and Board of Managers of the Setai Condominium Residences, seeking monetary damages of approximately $4,000,000 for alleged breaches of contract, breach of warranty, negligent construction and supervision, deceptive acts and practices, declaratory relief and injunction requiring repairs to Unit PH5B (the "Unit") in 40 Broad Street, New York, New York, rescission of the purchase agreement and promissory estoppel for delivering the Unit with material construction defects.  The action was settled pursuant to a settlement agreement, dated October 15, 2012, by and between Hadden and 40 Broad LLC (the "Agreement").  Pursuant to the Agreement, 40 Broad LLC was to make certain repairs to the Unit.  In the interim, Hadden was provided the use of Unit PH3C (the "Relocation Unit") until such time as all repairs are substantially completed.

On October 9, 2013, by letter, 40 Broad LLC ("Sponsor") advised Hadden that all repairs were substantially completed, paid Hadden for certain costs delineated in the Agreement and demanded that Hadden vacate the Relocation Unit. Notwithstanding the foregoing, Hadden refused to surrender and vacate the Relocation Unit. On November 7, 2013, Sponsor served Hadden with a Ten (10) Day Notice to Quit the Relocation Unit which expired on November 22, 2013. Hadden did not vacate in response to the Notice to Quit. Thus, Sponsor commenced a summary proceeding seeking, inter alia, a judgment of possession in favor of Sponsor and against Hadden for the Relocation Unit. The summary proceeding was settled by stipulation whereby the parties agreed to a list of outstanding repairs, which Sponsor has completed.  Hadden has surrendered the Relocation Unit and has resumed possession of the Unit.

On or about October 23, 2013, Hadden filed a second action in New York State Supreme Court against Sponsor, HFZ Capital Group, LLC and HFZ 40 Broad Street, LLC (collectively, "Defendants") seeking monetary damages of approximately $400,000 for alleged breach of the Agreement, negligent construction and supervision, promissory estoppel and attorneys' fees.  Defendants believe Hadden's claims are without merit because Sponsor complied with the Agreement and substantially completed all required repairs.  Defendants retained the law firm of Rosenberg & Estis to represent them and will vigorously defend Defendants in this action. While the action commenced by Hadden is still pending, Hadden has taken no steps to prosecute same and appears to have abandoned the action.  Rosenberg & Estis will continue to monitor same.

2. *Jacqueline S Finkelstein v. HFZ Capital LLC, Ziel Feldman and Nir Meir*:

On or about February 21, 2013, Jacqueline S. Finkelstein ("Finkelstein") filed an action in New York State Supreme Court against HFZ Capital LLC ("HFZ Capital"), Ziel Feldman and Nir Meir, seeking monetary damages of approximately $12,122,780 for alleged breaches of contract, breach of the covenant of good faith and fair dealing, quantum meruit and unjust enrichment for failure

21046904-v11

SPTChatsworth007726

to pay Finkelstein amounts allegedly due under her employment agreement with HFZ Capital.  The defendants retained the law firm of Meister Seelig & Fein, LLP to represent them and filed a motion to dismiss all causes of action against Mr. Feldman and Mr. Meir and three of the nine causes of action against HFZ (the "Motion").  Oral argument on the Motion was heard on December 19, 2013.  Judge Oing granted the motion to dismiss all claims against Feldman and Meir, and the equitable claims against HFZ other than the breach of the covenant of good faith and fair dealing.  On February 21, 2014 Plaintiff noticed an appeal of the December 19, 2013 Order.  Plaintiff failed to perfect the appeal, making the dismissals final. The answer (with respect to the breach of contract claims and the one remaining equitable claim) was filed on February 10, 2014. A Preliminary Conference was held on May 2, 2014 at which discovery dates were set, including an initial deadline to complete discovery of March 20, 2015.   Those dates were subsequently extended.  The parties settled the matter and a Stipulation of Discontinuance was filed in the action in October, 10, 2015.

3. ***Board of Managers of the Setai Condominium Residences at 40 Broad v. 40 Broad Street LLC, Asher Roshanzamir a/k/a Asher Zamir, and Joshua Roshanzamir, HFZ 40 Broad Street LLC Index No. 153598/2012 (Supreme Court, New York County)***: This action arises out of the alleged defective construction and renovation of a residential condominium apartment building known as The Setai Condominium Residences at 40 Broad Street, New York, New York.  In 2011, after the building had already reached substantial completion, HFZ 40 Broad Street LLC entered into a loan agreement with the Sponsor, 40 Broad Street LLC, whereby HFZ agreed to fund protective advances to pay for the common charges in the unsold units in the building and other actual expenses. Plaintiff claims that HFZ assumed responsibilities beyond those of a typical lender and, therefore, became a "de facto sponsor" for the project. Plaintiff alleges that HFZ, along with the actual sponsor for the project, is liable for $5 million in damages. HFZ has cross-claims against the Sponsor for contribution, indemnification, and breach of contract. The case is currently in the discovery phase.  Discovery has been completed and HFZ moved for summary judgment dismissing the Complaint and the cross-claims asserted against HFZ by the Sponsor and its principals.  Oral argument on the motion for summary judgment was held on September 8, 2017. The motion is currently sub judice. The parties participated in private mediation in November 2015. The mediation was unsuccessful.  On July 6, 2018, the parties requested that the Court hold off on issuing a ruling on the pending motion for summary judgment as the parties have agreed to make a further attempt at resolving the action through mediation.  The parties are in the process of scheduling the mediation for a date sometime in the fall.

   Troutman Sanders LLP is representing HFZ 40 Broad Street LLC. HFZ 40 Broad Street LLC is defending the action on the grounds that as a mere lending institution it is not responsible for damages caused by the Sponsor, or in the alternative, HFZ 40 Broad Street LLC's liability is limited to those damages that arose after HFZ 40 Broad Street LLC allegedly became the "de facto sponsor" for the project.  HFZ 40 Broad Street LLC is vigorously defending the action.

4. ***Rosalyn Walpin against Ziel Feldman in NY County on 12/30/2005***: – THIS MATTER WAS SETTLED, AND THE PLAINTIFF HAS SINCE DIED.

5. ***Juan Carlos Mendez v H F Z Capital Group et al***:  THIS MATTER WAS SETTLED AND DISCONTINUED WITH PREJUDICE.

Schedule III

SPTChatsworth007727

6. ***Joseph Guercio v H F Z Capital Group et al***:   THIS MATTER WAS SETTLED AND DISCONTINUED WITH PREJUDICE.

7. ***Frank Conte v H F Z Capital Group et al***.  Personal injury matter.  Submitted to insurance carrier(s). A Stipulation of Discontinuance was entered on September 24, 2014 discontinuing the matter without prejudice.

8. ***Raymond Ahedo and William Cairns v HFZ Capital Group, LLC and 11 East 68th Street, LLC.***  Personal injury matter.  Submitted to insurance carrier(s).

9. ***East 51st Street Development Company, LLC, et al v HFZ East 51, LLC, HFZ Capital Group, LLC, Ziel Feldman, et al.*** Action brought by the prior developer of the site in New York State Supreme Court suing the Sponsor/Developer, Ziel Feldman personally, and other affiliated entities for $6.35MM for breach of contract, unjust enrichment, tortious interference, fraudulent transfer, and equitable lien, for funds they allege are owed for services provided under the Cooperation and Deed in Lieu of Foreclosure Agreement (among other things).  Defendants moved to dismiss each of Plaintiffs' claims, except for breach of contract, on June 17, 2016.  Rather than address the issues raised in the motion to dismiss, Plaintiffs first filed a Verified First Amended Complaint on July 7, 2016, and then, on July 15, 2016, filed a brief in opposition to Defendants' motion to dismiss.  Pursuant to a stipulation between the parties, Defendants voluntarily withdrew their initial motion to dismiss, without prejudice, on July 20, 2016 and, on August 3, 2016, Defendants filed a motion to dismiss the amended pleading.  Plaintiffs opposed the motion, and defendants replied.  Oral argument on the motion to dismiss was held on February 1, 2017, before the Hon. Debra James.  At the end of oral argument, Justice James stated that she would issue a decision on or before March 21, 2017.  The defendants have retained the law firm of Cohen Tauber Spievack & Wagner to represent them in the matter and will continue to aggressively defend the action.  The motion remains undecided.

10. ***Joel Liberson v. Ziel Feldman et al (case# 160635-2015; Filed 10/16/2015).  .***  Personal injury matter.  Plaintiff alleged that the defendants, Ziel Feldman, HFZ 235 West 75th Street Owner, LLC, HFZ Capital Group, LLC, HFZ Property Management, NAF Construction Management, and Fortress Investment Group, engaged in a pattern of practice that has endangered the health and welfare of tenants in the subject building, including Liberson. According to the complaint, the defendants were "highly motivated" to remove as many tenants as possible in order to sell the units to prospective buyers. The complaint contains multiple allegations of negligence resulting in the plaintiff's respiratory ailments.  The complaint does not contain a specific demand for damages.  This matter has been submitted to insurance. Fortress has moved to dismiss the case against it. Feldman, NAF and the HFZ defendants will not oppose the motion. Discovery has been slow to proceed due, in part, to the pending motion. Depositions have yet to be scheduled.  Plaintiff filed a discovery motion which is odd since there is technically a stay in effect, and Defendants have opposed the motion, which is currently pending. The Defendants believe this action is without merit and are zealously defending same.  Plaintiff alleges illness due to ongoing construction in the building.  Submitted to insurance carrier(s).  In the event that this case results in a jury verdict, the current evaluation of the value of the claim is $100,000 - $125,000. In the event that this case settles, the current evaluation of the value of the claim is $75,000 - $100,000.  These estimates assume full liability and may change when counsel receives additional medical records, if any.

SPTChatsworth007728

11. ___Board of Managers of 22 Mercer Street Condominium v. 20/22 Mercer Street LLC, et al (including Ziel Feldman), Supreme Court, New York County___.  Defendants were the developers and sponsors of a condominium building that was completed in approximately 2007 with the last unit sold in 2008.  The Complaint alleges "fraudulent construction" with respect to the roof, the HVAC system and some electrical outlets.  The Defendants have made a motion to dismiss on the grounds that (a) the claim is barred by the statute of limitations and (b) the Complaint fails to state a cause of action.  The motion will be argued on July 16, 2015.  Prior to the litigation, the Board offered to settle for $650,000.  The defendants are being represented by Frank Kaiman, Esq., the General Counsel of Property Markets Group, Inc.  The case was dismissed by the Court on July 16, 2015 and no appeal was taken.

12. ___M. Lopez Contracting Corp. v. HFZ 344 72nd Street Owner, LLC, et al (Supreme Court, NY County, Index No. 152753/2016)___.  This is a mechanic's lien foreclosure action Plaintiff alleges it is owed $525,851.17 for work performed under a subcontract with defendant NAF Construction Management, LLC.  The mechanic's lien was bonded on December 30, 2016 (the bond amount is $578,437.00) and will need to be renewed annually.  Plaintiff has also alleged causes of action for trust fund diversion and unjust enrichment.  Plaintiff has taken that position that it merely provided laborers to NAF and that NAF was solely responsible for oversight and management of such laborers, and therefore Plaintiff was not responsible for defects in the work performed by its laborers on the Project.  Plaintiff's motion for summary judgment on its unjust enrichment cause of action only was denied in full.  The parties continue to work through document discovery.  We recently served another discovery deficiency letter, and we are also preparing responses and objections to Plaintiff's discovery demands.  We expect depositions to occur later this year or early next year.  Additionally, Plaintiff has filed a motion to consolidate this action with M. _Lopez Contracting Corp. v. HFZ 90 Lexington Avenue Owner, LLC, et al_ (Supreme Court, NY County, Index No. 156382) (see below).  Oral argument on Plaintiff's motion is upcoming.  Defendants are vigorously defending this action.

13. ___M. Lopez Contracting Corp. v. HFZ 90 Lexington Avenue Owner, LLC, et al (Supreme Court, NY County, Index No. 156382)___.  This is a mechanic's lien foreclosure action Plaintiff alleges it is owed $64,781.11 for work performed under a subcontract with defendant NAF Construction Management, LLC.  The mechanic's lien was bonded on December 30, 2016 (the bond amount is $71,260.00), and will need to be renewed annually.  Plaintiff has also alleged causes of action for trust fund diversion and unjust enrichment.  Plaintiff has taken that position that it merely provided laborers to NAF and that NAF was solely responsible for oversight and management of such laborers, and therefore Plaintiff was not responsible for defects in the work performed by its laborers on the Project.  Plaintiff's motion for summary judgment on its unjust enrichment cause of action only was denied in full.  The parties continue to work through document discovery.  We recently served another discovery deficiency letter, and we are also preparing responses and objections to Plaintiff's discovery demands.  We expect depositions to occur later this year or early next year.  Additionally, as noted, Plaintiff has filed a motion to consolidate this action with _M. Lopez Contracting Corp. v. HFZ 344 72nd Street Owner, LLC, et al_ (Supreme Court, NY County, Index No. 152753/2016).  Oral argument on Plaintiff's motion is upcoming.  Defendants are vigorously defending this action.

Schedule III

SPTChatsworth007729

14.     *NYCTL 2016-A Trust and The Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 2016-A Trust - v. - 40 Broad LLC et al.*  Action brought in May 2017 to foreclose on Unit 10A located at the Setai Condominium for failure to pay city taxes prior to May 2016.  Unit 10A is owned by 40 Broad LLC (Sponsor) and is leased to the Condominium for use as the resident managers unit and is security for HFZ's loan to Sponsor.  Lien balance as of May 23, 2016 is $16,628.35 with interest accruing at 9% per annum.  Sponsor failed to timely answer the complaint, HFZ served an answer on June 26, 2017 and the condominium served an answer on July 13, 2017.  Plaintiff filed a motion for summary judgement on January 25, 2018.  Thereafter, the Condominium paid off the lien and the lien was discharged and the action discontinued on May 1, 2018.

15.     *90 Lex LLC – v. – HFZ 90 Lexington Avenue Owner LLC and Ziel Feldman (Supreme Court, NY County, Index No. unassigned)*.  We received a summons with notice filed by the owner of Unit 9A at the 90 Lexington condominium, with a claim amount of $2,500,000.  The nature of the lawsuit, as alleged by plaintiff, is to recover monetary damages resulting from, among other things, breaches of contract, fiduciary duties owed and warranties, as well as fraud and negligence.  We have filed a notice of appearance with a demand for complaint on March 5, 2018.  However, due to ongoing settlement discussions between the parties, the plaintiff's time to serve a complaint has been extended pending the outcome of such settlement discussions.  Defendants are vigorously defending this action.

16.     *Midwest Curtainwalls, Inc. v. Walsh Glass & Metal, Inc., HFZ 90 Lexington Avenue Owner LLC, NAF Construction Management, LLC, et al. (SDNY Case # 118CV00908AT)*.  This is a mechanic's lien foreclosure action Plaintiff alleges it is owed $214,564.00 for work performed under a subcontract with defendant Walsh Metal & Glass, Inc.  The only cause of action stated against the HFZ Defendants (HFZ 90 Lexington Avenue Owner LLC and NAF Construction Management, LLC) is that the HFZ Defendants have failed to provide a verified statement of earnings relating to the trust account established for the Project, which Plaintiff alleges it demanded from the HFZ Defendants in December of 2017.  The HFZ Defendants are not aware of any such demand.  The HFZ Defendants are vigorously defending this action.

17.     *Synomica, Inc. and Stephan Bassett vs. American Friends of Sheba Medical Center-Tel Hashomer ("American Friends"), Sheba Medical Center at Tal Hashomer ("Sheba") and Helene Feldman*. THIS MATTER WAS DISMISSED WITH PREJUDICE.

18.     *Naomi Greenberg vs HFZ 344 West 72nd Street LLC, HFZ Capital Group, LLC, HFZ Property Management LLC, John Shannon, Andrew Posner and Ziel Feldman and The Department of Housing Preservation and Development of the City of New York*.  All claims have been settled and the litigation has been discontinued with prejudice.

19.     *Paula Giraldo v. Chatsworth Realty Corporation v. NAF Construction Management*. This matter arises out of a lawsuit commenced by Plaintiff Paula Giraldo, a laborer who was employed by NAF Construction Management. Plaintiff filed suit in New York County Supreme Court against Chatsworth Realty Corporation alleging she was injured while performing work at a job site located at 340 W.72nd St, New York, New York. Plaintiff claims that she was injured when she fell off a ladder while cleaning a light fixture.  Plaintiff, represented by Gorayeb &

21046904-v11

SPTChatsworth007730

Associates PC, asserts boilerplate allegations of violations of the New York Labor Law §§ 240(1), 241(6) and §200. She generally claims that defendant failed to provide a safe worksite and that she fell off a ladder while performing work at the site.  Pursuant to the CMA Agreement dated January 21, 2014 between HFZ 344 W 72nd Street LLC and NAF Construction Management LLC (NAF), NAF is required to provide additional insured coverage to Chatsworth Realty Corporation on a primary, noncontributory basis for both ongoing and completed operations for losses arising out of the work performed by NAF pursuant to the agreement.  Hiscox, the insurance carrier for Chatsworth Realty Corporation hired Lisa Black of Black Marjieh Leff & Sanford LLP to represent Chatsworth Realty Corporation. Lisa Black commenced a third party action against NAF seeking additional insured coverage for Chatsworth. The carrier for NAF, Clear Blue, disclaimed coverage to Chatsworth Realty Corporation based on Endorsement 22 of their policy "CROSS LIABILITY EXCLUSION" which states "It is hereby agreed that this policy shall not apply to any liability of one Named Insured for "bodily injury" or "personal Injury" to an employee of another Named Insured, nor shall it apply to property damage to real or personal property of another Named Insured."  Following this disclaimer we aggressively pushed back against Clear Blue and our broker, Rampart Coverage Corp. based on the position that the policy goes against the intent of the coverage we purchased and that this must be reversed. Clear Blue did remove the exclusion but refused to do so retroactively so the disclaimer stands for this this matter. We then pursued Rampart as they failed to procure coverage required for the work. On August 7th 2018 we received verification that Allianz, the Errors and Omissions carrier for Rampart Coverage Corp. will defend and indemnify Chatsworth Realty Corp. subject to all other terms and conditions of the Clear Blue policy and the follow form excess polices. The case is currently on hold by stipulation pending assignment of counsel by Allianz for Chatsworth.

20.    _**Carlos Perez and Jasmin Rivera v. Lend Lease (US) Construction LMB, Inc. et al**_.  This personal injury litigation is related to the One Madison Park project of which H F Z Capita Group LLC is a minority partner with Related Companies and CIM.  Related Companies is handling this matter through insurance.  This matter is being handled through insurance, and if somehow liability extended beyond insurance, the partnership has assets, including unsold collateral at the project with values in excess of $30,000,000.00.

**21.**    _**Tuttle Leasing Corp v. Ziel Feldman**_.  The matter is an appeal that stemmed from a civil court case and is unrelated to the Property.  On March 31, 2011, it was ordered that defendants-respondents' motion to dismiss the appeal is granted without opposition.

21046904-v11

SPTChatsworth007731

## **SCHEDULE OF CLIENT LOSSES**

None.

Schedule III

21046904-v12

SPTChatsworth007732

## SCHEDULE IV

## ORGANIZATIONAL CHART OF BORROWER

See attached.

SPTChatsworth007733

# INVENTORY LOAN CLOSING STRUCTURE



NORTON ROSE FULBRIGHT

SPTChatsworth007734

# INVENTORY LOAN CLOSING STRUCTURE OF THE CHATSWORTH
## 340-344 WEST 72ND STREET, NEW YORK, NY



NORTON ROSE FULBRIGHT

SPTChatsworth007735

## **EXHIBIT A**

## **OFFERING PLAN**

See attached.

SPTChatsworth007736

Co-Op Documents

1.   Cooperative Offering Plan for Chatsworth Realty Corporation, first accepting for filing on August 22, 2014
2.   First Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated December 19, 2014
3.   Second Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated December 22, 2014
4.   Third Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated March 12, 2015
5.   Fourth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated April 14, 2015
6.   Fifth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated April 24, 2015
7.   Sixth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated July 10, 2015
8.   Seventh Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated July 17, 2015
9.   Eighth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated October 28, 2015
10.  Ninth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated December 18, 2015
11.  Tenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated December 22, 2015
12.  Eleventh Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated January 22, 2016
13.  Twelfth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated March 7, 2016
14.  Thirteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated April 15, 2016
15.  Fourteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated April 26, 2016
16.  Fifteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated May 13, 2016
17.  Sixteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated June 15, 2016
18.  Seventeenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated December 9, 2016
19.  Eighteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated June 7, 2017
20.  Nineteenth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated October 4, 2017
21.  Twentieth Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated March 30, 2018
22.  Twenty-First Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation, dated April 3, 2018

SPTChatsworth007737

23.    Twenty-Second Amendment to Cooperative Offering Plan for Chatsworth Realty
       Corporation, dated April 20, 2018
24.    Twenty-Third Amendment to Cooperative Offering Plan for Chatsworth Realty Corporation,
       dated June 15, 2018

## EXHIBIT B

**FORM OF PLEDGE AGREEMENT**

See attached.

21046904-v11

SPTChatsworth007739

## INVENTORY LOAN PLEDGE AND SECURITY AGREEMENT

THIS INVENTORY LOAN PLEDGE AND SECURITY AGREEMENT (this "*Pledge Agreement*"), is made as of _____ ___, 20__, by **HFZ 344 WEST 72ND STREET TWO LLC**, a Delaware limited liability company (together with its successors and assigns, "*Pledgor*"), having an address at c/o H F Z Capital Group LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022, for the benefit of **STARWOOD PROPERTY MORTGAGE, L.L.C.**, a Delaware limited liability company (together with its successors and assigns, "*Lender*"), having an address at c/o Starwood Property Trust, Inc., 591 West Putman Avenue, Greenwich, Connecticut 06830.

## RECITALS

A.      Pursuant to that certain Inventory Loan Agreement dated as of September 27, 2018, between Lender and Pledgor (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Inventory Loan Agreement*"), Lender agreed to make a loan in the maximum aggregate principal amount of $130,207,000.00 to Pledgor (the "*Inventory Loan*"). Initially capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Inventory Loan Agreement.

B.      As a condition precedent to consummating the Inventory Loan in accordance with the Inventory Loan Agreement (or as a condition precedent to consummating an advance thereunder, as applicable), Lender has required that Pledgor agree to execute and deliver this Pledge Agreement as security for the Inventory Loan.

C.      By this Pledge Agreement, Pledgor is pledging each of the shares of Chatsworth Realty Corporation, a New York corporation ("*Corporation*"), set forth on Exhibit A hereto (collectively, the "*Unsold Shares*").  Pledgor acknowledges that it has and will receive material benefits from the Inventory Loan.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Pledgor agrees as follows:

**1. Defined Terms.** As used herein, the following terms shall have the following meanings:

(a) "*Assignment of Stock*" shall have the meaning ascribed thereto in Section 2(b) hereof.

(b) "*Charter Documents*" means the agreements and instruments listed on Schedule 1 hereto, as each of the same may hereafter be amended, restated, replaced, supplemented or otherwise modified from time to time.

(c) "*Collateral*" shall have the meaning ascribed thereto in Section 2(a) hereof.

SPTChatsworth007740

(d) "***Pledgor Obligations***" shall mean the due payment, performance and observance by Pledgor of all of its Obligations as defined in the Inventory Loan Agreement.

(e) "***Pledged Interests***" shall have the meaning ascribed thereto in <u>Section 2(a)(i)</u> hereof.

(f) "***Uniform Commercial Code***" means the Uniform Commercial Code as in effect from time to time in the State of New York except for matters which the Uniform Commercial Code of the State of New York provides shall be governed by the Uniform Commercial Code in effect in any state, in which case "***Uniform Commercial Code***" shall mean the Uniform Commercial Code as in effect from time to time in such other state.

(g) "***Unsold Units***" shall mean, at any given time, all of the Units owned by Pledgor identified in <u>Exhibit A</u> attached hereto.

## 2. <u>Pledge and Delivery of Collateral</u>.

(a) <u>The Pledge.</u> To secure the prompt payment and performance by Pledgor of the Pledgor Obligations, Pledgor hereby pledges and grants to Lender a security interest in all of Pledgor's right, title, interest, claim and estate in and to the each and all of the following, whether now owned by Pledgor or hereafter acquired and whether now existing or hereafter coming into existence (all being collectively referred to herein as "***Collateral***"):

(i)      (1) the Cooperative Interest (as such term is defined in the Uniform Commercial Code (or any successor statute) or any state laws of which are required by the Uniform Commercial Code to be applied in connection with the issue of perfection of security interests) allocated to the Unsold Units in the Property (as such term is defined in the Inventory Loan Agreement) and (2) all shares of, or other equity interests in Corporation that are owned by Pledgor (including, without limitation, the Unsold Shares, all proprietary leases appurtenant thereto, and the contents of the apartments to which the Unsold Shares are allocated), and all options, warrants and other rights and privileges of any type or nature now existing or hereafter acquired by Pledgor in respect of such shares or other equity interests (whether in connection with any capital increase, recapitalization, reclassification or reorganization of Corporation or otherwise), all investment property and all rights, preferences, privileges, dividends, distributions, redemption payments, or liquidation payments and general intangibles relating to any of the foregoing (all such shares and other equity interests, and all such options, warrants, other rights, investment property, preferences, privileges, dividends, distributions, redemption payments, or liquidation payments and general intangibles being hereinafter, collectively referred to as the "***Pledged Interests***");

(ii)      all certificates, instruments, or other writings representing or evidencing the Pledged Interests, and all accounts, payment intangible and general intangibles arising out of, or in connection with, the Pledged Interests;

(iii)      any and all moneys, payment intangibles or property due and to become due to Pledgor now or in the future in respect of the Pledged Interests, or

2

SPTChatsworth007741

to which Pledgor may now or in the future be entitled to in its capacity as a shareholder of Corporation, whether by way of a dividend, distribution, return of capital, or otherwise;

(iv)     all claims, causes of action, choses of action and other property of any type or nature which Pledgor now has or may in the future acquire in its capacity as a shareholder of Corporation against Corporation and its property, including all general intangibles relating thereto in any manner or any respect;

(v)     all rights of Pledgor under the Charter Documents and/or applicable law, including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the Pledged Interests, including all general intangibles relating thereto in any manner or any respect; and

(vi)     to the extent not otherwise included in clauses (i) through (v), (A) all proceeds and products of any and all of the property of Pledgor described in clauses (i) through (v) above, whether now owned and existing or hereafter acquired or arising, including, without limitation, (i) all rents, issues, royalties, distributions, revenues and profits of or from any of the foregoing, (ii) whatever is now or hereafter received by Pledgor upon the collection or sale, exchange, lease, transfer or other disposition (whether voluntary or involuntary) of, or otherwise with respect to, any item of Collateral, whether constituting accounts, general intangibles, equipment, inventory, money, deposit accounts, payment intangibles, goods, chattel paper, documents, instruments, insurance proceeds, securities, and any other tangible or intangible personal property, (iii) any such items that are now or hereafter acquired by Pledgor with any proceeds or products of Collateral, (iv) any amounts now or hereafter payable under any insurance policy by reason of any loss or damage to any Collateral or any proceeds or products thereof, and (v) the right to further transfer, including to pledge, mortgage, license, assign or sell, any of the Collateral or any interest therein, and (B) to the extent related to any property described in said clauses or such proceeds, all present and future books and records, files, invoices, papers and correspondence relating thereto, including, without limitation, books of account and ledgers of every kind and nature, computer programs, computer tapes, computer software, and all electronically recorded data relating to Pledgor or the business of Pledgor or to any or all of the Collateral, all equipment, receptacles, containers and cabinets for such books and records.

(b) <u>Delivery of the Collateral.</u> All certificates or instruments, if any, representing or evidencing any of the Collateral shall be delivered to and held by or on behalf of Lender pursuant hereto and shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer, stock powers endorsed by Pledgor in blank, and assignments in blank, all in form and substance reasonably satisfactory to Lender. Upon the occurrence and during the continuance of an Event of Default, Lender shall have the right, at any time, in its discretion upon written notice to Pledgor, to transfer to or to register in the name of Lender or its nominee any or all of the Collateral. Prior to or concurrently with the execution and delivery of this Pledge Agreement, Pledgor shall deliver to Lender (i) a Stock Power and Assignment of Proprietary Lease in the form attached as **Exhibit D** to the Inventory

3

SPTChatsworth007742

Loan Agreement, executed by Pledgor (collectively, an "*Assignment of Stock*"), for each of the Pledged Interests, transferring all of such Pledged Interests in blank, duly executed by Pledgor and undated, and (ii) each of the Unsold Shares (including all stock certificates and appurtenant proprietary leases). Lender shall have the right, at any time in its discretion upon the occurrence and during the continuance of an Event of Default and with prior notice to Pledgor, to transfer to, and to designate on such Pledgor's Assignment of Stock, any Person to whom the Pledged Interests are sold in accordance with the provisions hereof. In addition, Lender shall have the right at any time to exchange any Assignment of Stock representing or evidencing the Pledged Interests or any portion thereof for one or more additional or substitute Assignments of Interest representing or evidencing smaller or larger percentages of the Pledged Interests represented or evidenced thereby, subject to the terms thereof.

(c) <u>Obligations Unconditional.</u> The obligations of Pledgor hereunder are absolute and unconditional, irrespective of the value, genuineness, validity, regularity or enforceability of the Inventory Loan Agreement, the Note or any other Loan Documents, or any substitution, release or exchange of any guarantee of or security for any of the Obligations, and, to the fullest extent permitted by applicable law, irrespective of any other circumstance whatsoever which might otherwise constitute a legal or equitable discharge or defense of a surety or Pledgor, it being the intent of this <u>Section 2(c)</u> that the obligations of Pledgor hereunder shall be absolute and unconditional under any and all circumstances. Without limiting the generality of the foregoing, it is agreed that the occurrence of any one or more of the following shall not affect the liability of Pledgor hereunder:

(i) at any time or from time to time, without notice to Pledgor, the time for any performance of or compliance with any of the Obligations shall be extended, or such performance or compliance shall be waived;

(ii) any of the acts mentioned in any of the provisions of the Inventory Loan Agreement, the Note, or any other Loan Documents shall be done or omitted;

(iii) the maturity of any of the Obligations shall be accelerated, or any of the Obligations shall be modified, supplemented or amended in any respect, or any right under the Inventory Loan Agreement, the Note, or any other Loan Documents, or any other agreement or instrument referred to herein or therein shall be waived or any other guarantee of any of the Obligations or any security or collateral therefor shall be terminated, released or exchanged in whole or in part or otherwise dealt with; or

(iv) any lien or security interest granted to, or in favor of Lender as security for any of the Obligations shall fail to be perfected or shall be released.

(d) <u>Financing Statements.</u> Pledgor hereby authorizes Lender to file at any time or times, one or more UCC financing statements and cooperative addendums as described in UCC § 9-502 with the office of the Register of the City of New York, County of New York describing the Unsold Shares and further authorizes Lender to file at any time or times, one or more UCC financing statements describing the Collateral as all assets of Pledgor whether now

SPTChatsworth007743

owned or hereafter acquired (or words of similar import), or describing the Collateral as described herein, with the New York Secretary of State or the Delaware Secretary of State, and, with respect to both Unsold Shares and Pledged Interests, UCC assignment financing statements assigning the UCC financing statements which constitute part of the Collateral.

3. **Reinstatement**. The obligations of Pledgor under this Pledge Agreement shall be automatically reinstated if and to the extent that for any reason any payment by or on behalf of Corporation in respect of the Obligations is rescinded or must be otherwise restored by any holder of any of the Obligations, whether as a result of any proceedings in bankruptcy or reorganization or otherwise and Pledgor agrees that it will indemnify Lender on demand for all reasonable costs and expenses (including, without limitation, reasonable fees of counsel) incurred by Lender in connection with such rescission or restoration.

4. **Representations, Warranties of Pledgor**. Pledgor represents and warrants that:

(a) <u>Existence; Capacity</u>. Pledgor: (i) is a limited liability company duly organized and validly existing under the laws of the State of Delaware; (ii) has all requisite power, and has all governmental licenses, authorizations, consents and approvals required to own its assets and carry on its business as now being or as proposed to be conducted; and (iii) is qualified to do business in all jurisdictions in which the nature of the business conducted by it makes such qualification necessary under applicable law.

(b) <u>Litigation</u>. To the knowledge of Pledgor, there are no material legal or arbitral proceedings or any proceedings by or before any Governmental Authority or agency, now pending or (to the actual knowledge of Pledgor) threatened against Pledgor, the Collateral and/or Corporation.

(c) <u>No Breach</u>. None of the execution and delivery of this Pledge Agreement or the Inventory Loan Agreement by Pledgor, the consummation of the transactions herein or therein contemplated and compliance with the terms and provisions hereof or thereof will conflict with or result in a breach of, or require any consent under (except as have been obtained), any organizational documents of Pledgor or Corporation, any applicable law or regulation, or any order, writ, injunction or decree of any court or Governmental Authority, or any agreement or instrument to which Pledgor or Corporation is a party or by which it is bound or to which it is subject or constitute a default under any such agreement or instrument, or (except for the security interest granted pursuant to this Pledge Agreement) result in the creation or imposition of any lien upon any assets of Pledgor.

(d) <u>Necessary Action</u>. Pledgor has all requisite power and authority to execute, deliver and perform its obligations under this Pledge Agreement; the execution, delivery and performance by Pledgor of this Pledge Agreement has been duly authorized by all necessary action; and this Pledge Agreement has been duly and validly executed and delivered by Pledgor and constitutes its legal, valid and binding obligation, enforceable against Pledgor in accordance with its terms, subject to bankruptcy, insolvency, moratorium or other similar laws affecting the enforcement of creditors' rights in general and to general principles of equity (regardless of whether enforcements is sought in a proceeding in equity or at law).

SPTChatsworth007744

(e) <u>Approvals.</u> No authorizations, approvals and consents of, and no filings and registrations with, any governmental or regulatory authority or agency or under the organizational documents of Pledgor or Corporation or any other Person are necessary for (i) the execution, delivery or performance by Pledgor of this Pledge Agreement or for the validity or enforceability thereof, (ii) the grant by Pledgor of the assignments and security interests granted hereby, or the pledge by Pledgor of the Collateral pursuant hereto, (iii) the perfection or maintenance of the pledge, assignment and security interest created hereby except for the filing of financing statements under the Uniform Commercial Code or (iv) the exercise by Lender of the rights and remedies in respect of the Collateral pursuant to this Pledge Agreement (and upon such exercise, for the purchaser of such Collateral to become a shareholder of Corporation to the full extent of the Pledged Interests).

(f) <u>Ownership.</u> Pursuant to the terms of this Pledge Agreement, Lender has received a pledge of all of such outstanding shares in Corporation set forth on <u>Exhibit A</u> attached hereto. Upon acquisition of title to the Collateral, Pledgor will have good title to the Collateral, free and clear of all pledges, liens, mortgages, hypothecations, security interests, charges, options or other encumbrances whatsoever, except the security interest created by this Pledge Agreement and the other Loan Documents. The Pledged Interests are not and will not be subject to any contractual restriction upon the transfer thereof (except for any such restrictions contained herein). The organizational chart attached as <u>Exhibit B</u> hereto is true, correct and complete, and accurately reflects and identifies all holders of a beneficial interest of Pledgor.

(g) <u>Principal Place of Business.</u> Pledgor will not change Pledgor's principal place of business or state of organization/formation unless Pledgor has previously notified Lender thereof not less than ninety (90) days prior thereto and taken such action as may be requested by Lender in its sole discretion to cause the security interest of Lender in the Collateral to continue to be continuously perfected.

(h) <u>Valid Security Interest.</u> This Pledge Agreement creates a valid security interest in the Collateral, securing the Pledgor Obligations, and upon the filing in the appropriate filing offices of the financing statements to be filed in accordance with this Pledge Agreement and the delivery and possession of the security certificates which evidence the Pledged Interests along with the Assignment of Stock executed in blank, such security interests will be perfected, first priority security interests, and all filings and other actions necessary to perfect such security interests will have been duly taken.

5. <u>**Covenants of Pledgor**</u>. Pledgor covenants that:

(a) <u>No Transfer.</u> Except as otherwise permitted under the Loan Documents, Pledgor will not sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, nor will it create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any Collateral, or any interest therein, or any proceeds thereof, except for the security interest provided for by this Pledge Agreement.

(b) <u>No Waiver, Amendment, Etc.</u> Pledgor shall not directly or indirectly, without the prior written consent of Lender, attempt to waive, alter, amend, modify, supplement

6

SPTChatsworth007745

any provision of the Charter Documents in any manner that would reasonably be expected to result in a material adverse effect on the Collateral. Pledgor agrees that all rights to do any and all of the foregoing have been collaterally assigned to Lender, but Pledgor agrees that, upon request from Lender from time to time, Pledgor shall do any of the foregoing or shall join Lender in doing so or shall confirm the right of Lender to do so and shall execute such instruments and undertake such actions as Lender may reasonably request in connection therewith.

(c) <u>Settlement and Release.</u> Pledgor shall not make any election, compromise, adjustment or settlement in respect of any of the Collateral.

(d) <u>Preservation of Collateral.</u> Lender may, in its discretion, for the account and reasonable expense of Pledgor pay any amount or do any act required of Pledgor hereunder or reasonably requested by Lender to preserve, protect, maintain or enforce the Pledgor Obligations, the Collateral or the security interests granted herein, provided Pledgor has failed to pay such amount or take such action within fifteen (15) Business Days after written demand by Lender. Any such payment shall be deemed an advance by Lender to Pledgor and shall be payable by such Pledgor within twenty (20) days after written demand, and following such twenty (20) day period with interest thereon at the Default Rate from the date expended by Lender until paid.

(e) <u>Warranty of Title.</u> Pledgor shall warrant and defend the right, title and interest of Lender in and to the Collateral and the proceeds thereof against the claims and demands of all persons whomsoever other than Lender pursuant to this Pledge Agreement and the Inventory Loan Agreement.

(f) <u>Files and Records.</u> Pledgor shall maintain, at its principal office, and, upon reasonable request, make available to Lender the originals, or copies in any case where the originals have been delivered to Lender of the instruments, documents, policies and agreements constituting the Collateral (to the extent not held by Lender) and related documents and instruments, and all files, surveys, certificates, correspondence, appraisals, computer programs, tapes, discs, cards, accounting records and other information and data relating to the Collateral.

(g) <u>Litigation.</u> Pledgor shall promptly give to Lender notice of all pending legal or arbitration proceedings, and of all proceedings pending by or before any governmental or regulatory authority or agency or, if Pledgor obtains knowledge of such threat, threatened, against Pledgor or Corporation or which relates to the Collateral which, if adversely determined, might materially adversely affect Pledgor's or Corporation's condition (financial or otherwise) or business or the Collateral.

(h) <u>Existence, Etc.</u> So long as this Pledge Agreement is in full force and effect, Pledgor shall and shall cause Corporation to preserve and maintain its existence and all of its material rights, privileges and franchises. Pledgor shall comply and cause Corporation to comply with the requirements of all applicable laws, rules, regulations and orders of governmental or regulatory authorities; and pay and discharge or cause Corporation to pay or discharge all taxes, assessments and governmental charges or levies imposed on it or on its income or profits or on any of their property prior to the date on which penalties attach thereto,

21041318-v9

SPTChatsworth007746

except for any such tax, assessment, charge or levy the payment of which is being contested in good faith and by proper proceedings.

(i) <u>Charter Documents.</u> Pledgor shall, at its expense:

(i)     perform and observe all the terms and provisions of the Charter Documents to be performed or observed by it, maintain the Charter Documents in full force and effect, enforce the Charter Documents in accordance with their respective terms, and to take all such action to such end relating to the Charter Documents as may be from time to time reasonably requested by Lender; and

(ii)     furnish to Lender reasonably promptly upon receipt thereof copies of all notices, requests and other documents received by Pledgor under or pursuant to the Charter Documents, and from time to time furnish to Lender such information and reports regarding the Collateral as Lender may reasonably request.

(j) <u>Principal Place of Business and State of Organization.</u> Pledgor will not change Pledgor's principal place of business or state of organization unless Pledgor has previously notified Lender thereof and taken such action as is reasonably requested by Lender to cause the security interest of Lender in the Collateral to continue to be perfected.

**6.     Certain Understandings of Parties; Registration of Pledge; Control of Collateral, Etc.** The parties acknowledge and agree that it is their intention that the terms of the Pledged Interests do and will provide that they shall constitute a "security" within the meaning of Article 8 of the Code (including Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York, and Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995. The parties acknowledge and agree that it is their intention that the Pledged Interests, and the Certificates of Pledgor in Corporation which have been delivered to Lender on the date hereof, constitute and will constitute "certificated securities" (as defined in the Code). Pledgor therefor covenants and agrees that Pledgor shall not, directly or indirectly, without the prior written consent of Lender, alter, amend modify, supplement or change in any way, the certificate of incorporation of Corporation as in effect on the date hereof.

**7.     Further Assurances; Remedies.** In furtherance of the grant of the pledge and security interest pursuant to <u>Section 2</u> hereof, Pledgor hereby agrees with Lender as follows:

(a) <u>Delivery and Other Perfection.</u> Pledgor shall:

(i)     if any of the above-described Collateral required to be pledged by Pledgor under <u>Section 2(a)</u> hereof is received by Pledgor, forthwith either (x) transfer and deliver to Lender such Collateral so received by Pledgor (together with the certificates (if any) for any such Collateral, including stock powers and assignments duly endorsed in blank) all of which thereafter shall be held by Lender, pursuant to the terms of this Pledge Agreement, as part of the Collateral or (y) take such other action as Lender

8

SPTChatsworth007747

shall deem reasonably necessary or appropriate to duly file on record the security interest created hereunder in such Collateral referred to in said Section 2(a);

(ii)     give, execute, deliver, file and/or record any financing statement, notice, instrument, document, agreement or other papers that may be necessary or desirable (in the reasonable judgment of Lender) to create, preserve, perfect or validate the security interest granted pursuant hereto or to enable Lender to exercise and enforce its rights hereunder with respect to such pledge and security interest; and

(iii)    permit representatives of Lender, upon reasonable notice, at any time during normal business hours to inspect and make abstracts from its books and records pertaining to the Collateral, and forward copies of any notices or communications received by Pledgor with respect to the Collateral, all in such manner as Lender may reasonably require.

(b)  Preservation of Rights.  Except in accordance with applicable law, Lender shall not be required to take steps necessary to preserve any rights against prior parties to any of the Collateral.

(c)  Pledged Collateral.

(i)     Pledgor shall not and shall not have the right to directly or indirectly, without the prior written consent of Lender, attempt to waive, alter, amend, modify, supplement or change in any manner that would be reasonably expected to result in a material adverse effect on the Collateral, Lender's rights therein, or release, subordinate, terminate or cancel in whole or in part, or give any consent under, any of the instruments, documents, policies or agreements constituting the Collateral or exercise any of the rights, options or interests of Pledgor as party, holder, mortgagee or beneficiary thereunder except as otherwise expressly permitted under the Inventory Loan Agreement or hereunder. Pledgor agrees that all rights to do any and all of the foregoing have been collaterally assigned to and may be exercised by Lender but Pledgor agrees that, upon reasonable request from Lender from time to time, Pledgor shall do any of the foregoing or shall join Lender in doing so or shall confirm the right of Lender to do so and shall execute such instruments and undertake such actions as Lender may reasonably request in connection therewith. Pledgor shall not make any election, compromise, adjustment or settlement in respect of any of the Collateral. Notwithstanding anything herein to the contrary, so long as no Event of Default shall have occurred and be continuing, Pledgor shall have the right to exercise all of Pledgor's rights under the Charter Documents to which it is a party for all purposes not inconsistent with any of the terms of this Pledge Agreement, the Note, the Inventory Loan Agreement or any other Loan Document, provided that Pledgor agrees that it will not take any action in any manner that is inconsistent with the terms of this Pledge Agreement, the Note, the Inventory Loan Agreement or any other Loan Document.

(ii)    Anything to the contrary notwithstanding, (i) Pledgor shall remain liable under the Charter Documents to perform all of its duties and obligations thereunder to the same extent as if this Pledge Agreement had not been executed, (ii) the

9

SPTChatsworth007748

exercise by Lender of any of the rights hereunder shall not release Pledgor from any of its duties or obligations under the Charter Documents, and (iii) Lender shall have no obligation or liability for Pledgor's actions or omissions under the Charter Documents by reason of this Pledge Agreement, nor shall Lender be obligated to perform any of the obligations or duties of Pledgor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

        (d) <u>Events of Default, Etc.</u> During any period in which an Event of Default has occurred and is continuing:

        (i)     Lender shall have all of the rights and remedies with respect to the Collateral of a secured party under the Uniform Commercial Code (whether or not said Uniform Commercial Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral as if Lender were the sole and absolute owner thereof (and Pledgor agrees to take all such action as may be appropriate to give effect to such right);

        (ii)     Lender in its discretion may, in its name or in the name of Pledgor or otherwise, demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so;

        (iii)     Lender may, at its option, apply all or any part of the Collateral in accordance with <u>Section 7(f)</u>;

        (iv)     Lender may, in accordance with the terms hereof and the Uniform Commercial Code, with respect to the Collateral or any part thereof which shall then be or shall thereafter come into the possession, custody or control of Lender or any of its agents, sell, assign or otherwise dispose of all or any part of such Collateral, at such place or places as Lender deems best, and for cash or on credit or for future delivery (without thereby assuming any credit risk), at public or private sale, without demand of performance or notice of intention to effect any such disposition or of time or place thereof (except such notice as is required above or by applicable statute and cannot be waived) and Lender or anyone else may be the purchaser, assignee or recipient of any or all of the Collateral so disposed of at any public sale (or, to the extent permitted by law, at any private sale), and thereafter hold the same absolutely, free from any claim or right of whatsoever kind, including any right or equity of redemption (statutory or otherwise), of Pledgor, any such demand, notice or right and equity being hereby expressly waived and released. Unless prohibited by applicable law, Lender may, without notice or publication, adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for the sale, and such sale may be made at any time or place to which the same may be so adjourned;

SPTChatsworth007749

(v)      Lender may exercise all ownership, management or shareholder rights, powers and privileges to the same extent as Pledgor is entitled to exercise such rights, powers and privileges;

(vi)      Lender may, in connection with a sale of all or any of the Pledged Interests, without any further action of any party, cause any purchaser or transferee of all or any part of any Pledged Interests to be admitted as a new member, or owner or be recognized as a shareholder of Corporation to the extent of such Pledged Interests, and cause Pledgor to withdraw as a member or owner or cease to be a shareholder of Corporation to the extent such Pledged Interests are sold or transferred, and complete by inserting the Effective Date (as defined therein) and the name of the assignee thereunder and deliver to such assignee the Assignment of Stock executed and delivered by Pledgor and, if appropriate, cause one or more amended or restated certificates of limited partnership, certificates of limited liability company or articles of incorporation to be filed with respect to Corporation;

(vii)      Lender may exercise any and all rights and remedies of Pledgor under or in connection with the Charter Documents or otherwise in respect of the Collateral, including, without limitation, any and all rights of Pledgor to demand or otherwise require payment of any amount under, or performance of any provisions of, the Charter Documents; and

(viii)      all payments received, directly or indirectly, by Pledgor under or in connection with the Charter Documents or otherwise in respect of the Collateral shall be received in trust for the benefit of Lender, shall be segregated from other funds of Pledgor and shall be forthwith paid over to Lender in the same form as so received (with any necessary endorsement).

The proceeds of any collection, sale or other disposition under this Section 7(d) shall be applied by Lender pursuant to Section 7(f) hereof.

Pledgor recognizes that, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws, Lender may be compelled, with respect to any sale of all or any part of the Collateral, to limit purchasers to those who will agree, among other things, to acquire the Collateral for their own account, for investment and not with a view to the distribution or resale thereof. Pledgor acknowledges that any such private sales may be at prices and on terms less favorable to Lender than those obtainable through a public sale without such restrictions, and, notwithstanding such circumstances, Pledgor agrees that any such private sale shall be deemed to have been made in a commercially reasonable manner and that Lender shall have no obligation to engage in public sales and no obligation to delay the sale of any Collateral for the period of time necessary to permit the issuer thereof to register it for public sale.

(e) Private Sale. Lender shall not incur any liability as a result of the sale of the Collateral, or any part thereof, at any private sale conducted hereunder in accordance with the Uniform Commercial Code. Pledgor hereby waives any claims against Lender arising by reason of the fact that the price at which the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the

11

SPTChatsworth007750

aggregate amount of the Pledgor Obligations, even if Lender accepts the first offer received from an unrelated third party offeree, and does not offer the Collateral to more than one offeree.

(f) <u>Application of Proceeds.</u> Except as otherwise herein expressly provided, the proceeds of any collection, sale or other realization of all or any part of the Collateral pursuant hereto, and any other cash at the time held by Lender under this <u>Section 7,</u> shall be applied by Lender:

<u>First,</u> to the payment of the out-of-pocket costs and expenses of such collection, sale or other realization, including reasonable out-of-pocket costs and expenses of Lender (including the reasonable fees and expenses of its counsel), and all third party costs and expenses made or incurred by Lender in connection therewith;

<u>Next,</u> to the payment in full of the Pledgor Obligations; and

<u>Finally,</u> to the payment to Pledgor, or its successors or assigns, or as a court of competent jurisdiction may direct, of any surplus then remaining.

As used in this <u>Section 7,</u> "***proceeds***" of Collateral shall mean cash, securities and other property realized in respect of, and distributions in kind of, Collateral, including any thereof received under any reorganization, liquidation or adjustment of debt of Pledgor or any issuer of or obligor on any of the Collateral.

(g) <u>Attorney-in-Fact.</u> Without limiting any rights or powers granted by this Pledge Agreement to Lender, Lender is hereby appointed the attorney-in-fact of Pledgor, such rights to be exercisable only upon the occurrence of an Event of Default, for the purpose of, upon the occurrence and during the continuance of an Event of Default, carrying out the provisions of this <u>Section 7</u> and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof, which appointment as attorney-in-fact is irrevocable and coupled with an interest. Without limiting the generality of the foregoing, so long as Lender shall be entitled under this <u>Section 7</u> to make collections in respect of the Collateral, Lender shall have the right and power to receive, endorse and collect all checks made payable to the order of Pledgor representing any payment or other distribution in respect of the Collateral or any part thereof and to give full discharge for the same.

(h) <u>Confirmation Statement; Control Agreement.</u> To better assure the perfection of the security interest of Lender in the Pledged Interests, concurrently with the execution and delivery of this Pledge Agreement, Pledgor shall send written instructions in the form of <u>Exhibit C</u> hereto to Corporation, and shall cause Corporation to, and Corporation shall, deliver to Lender a Recognition Agreement substantially in the form attached as **Exhibit E** to the Inventory Loan Agreement. Notwithstanding anything in this paragraph, neither the written instructions nor the Recognition Agreement shall be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in this Pledge Agreement.

(i) <u>Opinion of Counsel.</u> Pledgor shall cause to be delivered to Lender concurrently herewith, an opinion of counsel to Pledgor, acceptable to Lender in its reasonable

SPTChatsworth007751

discretion, with respect to the authority of, and due execution and delivery by, Pledgor, and the enforceability of the Pledge Agreement.

        8. <u>Termination</u>. This Pledge Agreement shall survive the exercise of remedies following an Event of Default under the Inventory Loan Agreement or the other Loan Documents, and shall remain in full force and effect until all Obligations and other sums due under the Inventory Loan Agreement and the other Loan Documents have been indefeasibly paid in full to Lender or Lender, as applicable. Upon the indefeasible payment in full of all Obligations under the Loan Documents to Lender or Lender, as applicable or as otherwise set forth in the Inventory Loan Agreement, this Pledge Agreement shall terminate, and Lender shall forthwith cause to be assigned, transferred and delivered, against receipt but without any recourse, warranty or representation whatsoever, any remaining Collateral and money received in respect thereof, to or on the order of Pledgor and authorize all applicable UCC-3 termination statements reasonably requested by Pledgor. Lender's obligation to so assign, transfer and deliver shall survive the termination of this Pledge Agreement.

        9. <u>Miscellaneous</u>.

        (a) <u>No Waiver.</u> No failure on the part of Lender or any of its agents to exercise, and no course of dealing with respect to, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by Lender or any of its agents of any right, power or remedy hereunder preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The remedies provided herein are cumulative and are not exclusive of any remedies provided by law.

        (b) <u>Governing Law.</u> The provisions of Section 10.3 of the Inventory Loan Agreement shall apply mutatis mutandis to this Pledge Agreement and are hereby incorporated by reference into this Pledge Agreement to the same extent and with the same force as if fully set forth herein.

        (c) <u>Notices.</u> All notices, demands, requests, consents, approvals or other communications required, permitted or desired to be given hereunder shall be given to Pledgor at the address for Pledgor and in accordance with Section 10.6 of the Inventory Loan Agreement.

        (d) <u>Waivers, etc.</u> The terms of this Pledge Agreement may be waived, altered or amended only by an instrument in writing duly executed by Pledgor and Lender. Any such amendment or waiver shall be binding upon Lender and Pledgor.

        (e) <u>Successors and Assigns.</u> This Pledge Agreement shall be binding upon the successors and assigns of Pledgor and inure to the benefit of the successors and assigns of Lender (provided, however, that Pledgor shall not assign or transfer its rights hereunder without the prior written consent of Lender). Without limiting the foregoing, Lender may, in accordance with the Inventory Loan Agreement, at any time and from time to time without the consent of Pledgor (but with prior written notice to Pledgor), assign or otherwise transfer all or any portion of its rights and remedies under this Pledge Agreement to any other person or entity, together with other property of Pledgor for such purposes in connection with a transfer of Lender's interest in the Inventory Loan. Without limiting the foregoing, in connection with any assignment of the

SPTChatsworth007752

Inventory Loan in accordance with the Inventory Loan Agreement, Lender may assign or otherwise transfer all of its rights and remedies under this Pledge Agreement to the assignee and such assignee shall thereupon become vested with all of the rights and obligations in respect thereof granted to Lender herein or otherwise. Each representation and agreement made by Pledgor in this Pledge Agreement shall be deemed to run to, and each reference in this Pledge Agreement to Lender shall be deemed to refer to, Lender and each of its successors and assigns.

(f) <u>No Liability on Part of Lender.</u> Lender, by its acceptance of this Pledge Agreement, the Collateral and any payments on account thereof, shall not be deemed to have assumed or to have become liable for any of the obligations or liabilities of Pledgor. Lender shall have no duty to collect any sums due in respect of any of the Collateral in its possession or control, or to enforce, protect or preserve any rights pertaining thereto, and Lender shall not be liable for failure to collect or realize upon the Collateral, or any part thereof, or for any delay in so doing, nor shall Lender be under any obligation to take any action whatsoever with regard thereto. Lender shall, if requested by the payor of any revenue payment, give receipts for any payments received by Lender on account of the Collateral.

(g) <u>Expenses, Indemnification.</u>

(i)      Pledgor agrees to pay or reimburse Lender for paying: (A) all reasonable out of pocket expenses of Lender (including, without limitation, the reasonable fees and expenses of counsel to Lender), in connection with (1) the negotiation, preparation, execution and delivery of this Pledge Agreement and (2) any amendment, modification or waiver of any of the terms of this Pledge Agreement requested or initiated by Pledgor; (B) all costs and expenses of Lender (including reasonable counsel's fees) in connection with any enforcement or collection proceedings resulting from an Event of Default; and (C) all transfer, stamp, documentary or other similar taxes, assessments or charges levied by any governmental or revenue authority in respect of this Pledge Agreement, or any other document referred to herein and all costs, expenses, taxes, assessments and other charges incurred in connection with any filing, registration, recording or perfection of any security interest contemplated by this Pledge Agreement or any document referred to herein.

(ii)      Pledgor hereby agrees to indemnify Lender and its directors, officers, employees and agents from, and hold each of them harmless against, any and all losses, liabilities, claims, damages or expenses incurred by any of them arising out of or by reason of any claim of any Person relating to or arising out of the acts or omissions of Pledgor under this Pledge Agreement or, after Lender has exercised any rights in accordance herewith, the Charter Documents (but excluding any such losses, liabilities, claims, damages or expenses incurred by reason of the gross negligence or willful misconduct of the Person to be indemnified).

(h) <u>Further Assurances.</u> Pledgor agrees that, from time to time upon the written request of Lender, Pledgor will execute and deliver such further documents and do such other acts and things as Lender may reasonably request in order fully to effect the purposes of this Pledge Agreement.

21041318-v9

SPTChatsworth007753

(i) <u>Delay Not a Waiver.</u> Neither any failure nor any delay on the part of Lender in insisting upon strict performance of any term, condition, covenant or agreement, or exercising any right, power, remedy or privilege hereunder, shall operate as or constitute a waiver thereof, nor shall a single or partial exercise thereof preclude any other future exercise, or the exercise of any other right, power, remedy or privilege.

(j) <u>Counterparts.</u> This Pledge Agreement may be executed by facsimile or other electronic means, and in any number of counterparts, all of which taken together shall constitute one and the same instrument and any of the parties hereto may execute this Pledge Agreement by signing any such counterpart.

(k) <u>Severability.</u> If any provision hereof is invalid and unenforceable in any jurisdiction, then, to the fullest extent permitted by law, (i) the other provisions hereof shall remain in full force and effect in such jurisdiction and shall be liberally construed in favor of Lender in order to carry out the intentions of the parties hereto as nearly as may be possible and (ii) the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

(l) <u>Recitals.</u> The recital and introductory paragraphs hereof are a part hereof, form a basis for this Pledge Agreement and shall be considered prima facie evidence of the facts and documents referred to therein.

(m) <u>Gender; Number.</u> As used in this Pledge Agreement, the masculine, feminine or neuter gender shall be deemed to include the others, and the singular shall include the plural (and vice versa), whenever the context so requires.

(n) <u>Irrevocable Proxy.</u> Solely with respect to Article 8 Matters (as defined below), Pledgor hereby irrevocably grants and appoints Lender, from the date of this Pledge Agreement until the termination of this Pledge Agreement in accordance with its terms, but only exercisable from and after the occurrence and during the continuation of an Event of Default, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Collateral in Corporation by Pledgor, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters. The proxy and powers granted to Lender by Pledgor pursuant to this Pledge Agreement are coupled with an interest and are given to secure the performance of Pledgor's obligations under this Pledge Agreement. The proxy granted and appointed in this <u>Section 9(n)</u> shall include the right to sign Pledgor's name (as a shareholder of Corporation) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Collateral that applicable law may permit or require, to cause the Pledged Collateral to be voted in accordance with the preceding sentence. Pledgor hereby represents and warrants that there are no other proxies and/or powers of attorney with respect to any Article 8 Matter and the Pledged Collateral that Pledgor may have granted or appointed. Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Collateral with respect to any Article 8 Matter without prior written consent of Lender and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect. As used herein, an "***Article 8 Matter***" means any actions, decision, determination or election by Corporation or its shareholder that its shares or other equity interests be, or cease to be , a "security" within the meaning of Article 8 of the Uniform Commercial Code (including

15

SPTChatsworth007754

Section 8-102(a)(15) thereof) as in effect from time to time in the State of New York and Article 8 of the Uniform Commercial Code of any other applicable jurisdiction that now or hereafter substantially includes the 1994 revisions to Article 8 thereof as adopted by the American Law Institute and the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995, and all other matters related to any such action, decision, determination or election.

[BALANCE OF PAGE INTENTIONALLY BLANK;
SIGNATURE PAGES FOLLOW]

21041318-v9

SPTChatsworth007755

IN WITNESS WHEREOF, Pledgor has executed this Pledge Agreement as of the day and year first above written.

**PLEDGOR:**

**HFZ 344 WEST 72ND STREET TWO LLC**, a Delaware limited liability company

By: _____
Name: Ziel Feldman
Title:   Authorized Representative

**[SIGNATURES CONTINUE ON NEXT PAGE]**

*Signature Page to Inventory Loan Pledge and Security Agreement*

SPTChatsworth007756

**ACCEPTED BY LENDER:**

**STARWOOD PROPERTY MORTGAGE, L.L.C.**

By: _____
Name:   Andrew Sossen
Title:    Authorized Signatory

*Signature Page to Inventory Loan Pledge and Security Agreement*

SPTChatsworth007757

## SCHEDULE 1

### CHARTER DOCUMENTS

1.      Restated Certificate of Incorporation of Chatsworth Realty Corporation, a New York corporation (the "*Corporation*"), dated as of May 2, 2016; and

2.      Amended and Restated By-Laws of the Corporation.

SCHEDULE 1

SPTChatsworth007758

**Exhibit A**

**UNSOLD SHARES**

**[Attached]**

EXHIBIT A

SPTChatsworth007759

**Exhibit B**

**Organizational Chart**

**[Attached]**

EXHIBIT B

SPTChatsworth007760

**EXHIBIT C**
**FORM OF INSTRUCTION TO REGISTER PLEDGE**

[DATE]

To:     Chatsworth Realty Corporation, a New York corporation

In accordance with the requirements of that certain Inventory Loan Pledge and Security Agreement, dated of even date herewith (as amended, supplemented or otherwise modified from time to time, the "*Pledge Agreement*"), between STARWOOD PROPERTY MORTGAGE, L.L.C., a Delaware limited liability company (together with its successors and assigns, "*Pledgee*"), and HFZ 344 WEST 72ND STREET TWO LLC, a Delaware limited liability company ("*Pledgor*"), you are hereby instructed, to assure the perfection of the security interest of Lender in the stock of the Corporation described below, to register the pledge of the following interests in the name of Pledgee as follows:

All of the ownership interest of Pledgor in Chatsworth Realty Corporation, a New York corporation (the "*Corporation*"), including without limitation, all of the following property now owned or at any time hereafter acquired by Pledgor or in which Pledgor now has or at any time in the future may acquire any right, title or interest:

(a)     all shares of, or other equity interests in, the Corporation and options, warrants, and other rights hereafter acquired by Pledgor in respect of such shares or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of the Corporation or otherwise) (all such shares and other equity interests, and all such options, warrants and other rights being hereinafter collectively referred to as the "*Pledged Interests*"); provided, however, that in no event shall the aggregate amount of the Pledged Interests exceed the pledged percentage interest in the Corporation set forth in Section 2(a)(i) of the Pledge Agreement;

(b)     all certificates, instruments, or other writings representing or evidencing the Pledged Interests, and all accounts and general intangibles arising out of, or in connection with, the Pledged Interests;

(c)     any and all moneys or property due and to become due to Pledgor now or in the future in respect of the Pledged Interests, or to which Pledgor may now or in the future be entitled to in its capacity as a shareholder of the Corporation, whether by way of a dividend, distribution, return of capital, or otherwise;

(d)     all other claims which Pledgor now has or may in the future acquire in its capacity as a shareholder of the Corporation against the Corporation and its property;

(e)     all rights of Pledgor under the Charter Documents, including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the Pledged Interests; and

(f)     to the extent not otherwise included in clauses (a) through (e), all proceeds of and to any of the property of Pledgor described in clauses (a) through (e) above and, to the

EXHIBIT C

extent related to any property described in said clauses or such proceeds, all books, correspondence, credit files, records, invoices and other papers.

**[SIGNATURES CONTINUE NEXT PAGE]**

EXHIBIT C

SPTChatsworth007762

Very truly yours,

**PLEDGEE:**

**STARWOOD PROPERTY MORTGAGE, L.L.C.**,
 a Delaware limited liability company

By: _____
Name: _____
Title: _____


**[SIGNATURES CONTINUE ON FOLLOWING PAGE]**

*Signature Page to Instruction to Register Pledge*

SPTChatsworth007763

**PLEDGOR:**

**HFZ 344 WEST 72ND STREET TWO LLC,**
a Delaware limited liability company

By: _____
Name: Ziel Feldman
Title:   Authorized Signatory

*Signature Page to Instruction to Register Pledge*

SPTChatsworth007764

<u>**EXHIBIT D**</u>
**STOCK POWER AND ASSIGNMENT OF PROPRIETARY LEASE**

**[Attached]**

EXHIBIT D

SPTChatsworth007765

**<u>EXHIBIT E</u>**
**FORM OF RECOGNITION AGREEMENT**

**[Attached]**

SPTChatsworth007766

## <u>EXHIBIT C</u>

**FORM OF RECOGNITION AGREEMENT**

See attached.

Exhibit C

21046904-v11

SPTChatsworth007767

# RECOGNITION AGREEMENT

**THIS RECOGNITION AGREEMENT** is made as of this ___ day of _____, 201__ by and among **CHATSWORTH REALTY CORPORATION**, a New York corporation (the "**Corporation**") having an address at 600 Madison Avenue, 15th Floor, New York, New York 10022, **HFZ 344 WEST 72ND STREET TWO LLC**, a Delaware limited liability company ( "**Shareholder**"), having an address at 600 Madison Avenue, 15th Floor, New York, New York 10022 and **STARWOOD PROPERTY MORTGAGE, L.L.C.**, a Delaware limited liability company having an address at c/o Starwood Property Trust, Inc., 591 West Putnam Avenue, Greenwich, Connecticut 06830 ("**Lender**").

**SECTION I. DEFINITIONS.** This section identifies certain terms in, and the parties to this Recognition Agreement.

1. Apartment Corporation and address: Chatsworth Realty Corporation, 600 Madison Avenue, 15th Floor, New York, NY 10022

2. Building, which includes the land and all improvements, designated by the building address and owned in fee unless otherwise noted as a leasehold (herein the "Building") as further set forth on Schedule A attached hereto.

3. Shareholder:
   - HFZ 344 West 72nd Street Two LLC

4. Lender and address:        Starwood Property Mortgage, L.L.C., c/o Starwood Property Trust, Inc., 591 West Putman Avenue, Greenwich, CT 06830

5. Managing Agent and address: HFZ Property Management LLC 600 Madison Avenue, 15th Floor, New York, New York 10022

6. Number of Shares of stock of the Shareholder allocated to the Apartments (the "Shares): [___]

7. Apartment designation and Building address: Units set forth on Schedule B annexed all located (the "Apartments")

8. Loan Amount (Principal): The amount loaned is herein the "Loan". Inventory Loan: $130,207,000.00

9. Leases: The proprietary leases for all the Units set forth on Schedule B annexed (the "Leases").

10. Date of this Agreement: _____, 201__

SPTChatsworth007768

**SECTION II. AGREEMENTS**. This is an agreement between the Corporation and the Lender which is consented to and approved by the Shareholder. The terms used herein shall have the meanings given to them in this agreement and SECTION I.

1.      The Corporation owns the Building.

2.      The Corporation represents that its books and records reflect that the Shareholder owns the Leases and Shares.

3.      The Loan is secured by the Shareholder's ownership interest in the Leases and Shares.

4.      The Corporation will give the Lender notice of any default by the Shareholder in its obligations to the Corporation. It shall be the primary obligation of the Shareholder to cure any defaults by the Shareholder. The Corporation shall promptly notify the Lender of any other document concerning (a) any requirement for the performance of any material act by the Shareholder with respect to any obligation to the Corporation (e.g., notice of imposition of "special" Assessments), or (b) any pending or threatened litigation affecting the Shareholder, the Corporation or its Board of Directors and, in each such case, deliver to the Lender a true copy of each such document.

5.      All notices given hereunder shall be given to the respective addresses referred to in Section I above or such other addresses of which notice has been given as herein provided. Notices hereunder must be given by registered or certified mail ("Mail"), or recognized national overnight mail or courier service ("Courier Service"). Notices shall be deemed given on the date of delivery to the Courier Service or deposit in a United States Mail depository.

6.      The Corporation agrees to recognize the rights of Lender, as secured party, with respect to the Shares and Leases. The Corporation acknowledges that Lender shall have the right, but not the obligation, to cure a default of the Shareholder or make any payment on behalf of the Shareholder. Lender shall have the option to cure the Shareholder's default within the greater of (i) 30 days or (ii) the applicable cure period under the Leases, such period to begin upon the receipt by Lender of Notice of Default given under Section 4, and the Corporation shall take no action to enforce its rights against the Shareholder unless Lender has failed to cure the default within such cure period. Notwithstanding the foregoing, such cure period shall be extended, with respect to nonmonetary defaults, for a reasonable period of time, including the time during which Lender is pursuing efforts to realize on its security interest in the Shares and the Lease.

7.      A default by the Shareholder under any of its obligations to the Corporation shall constitute a default under this agreement, entitling Lender to exercise all rights and remedies at law or in equity and under this agreement.

8.      The Corporation will not consent to any encumbrance, assignment, sale, transfer, termination, cancellation, surrender or modification of the Leases and/or Shares by the Shareholder (other than the pledge of the Shares and the assignment of the Leases to Lender) or permit subletting of the Apartments notwithstanding the provisions of the Leases, other than as may be required by law, without the prior written consent of the Lender.

9.      The parties hereto agree that all present and future monetary obligations of the Shareholder to the Corporation under the Leases and By-Laws of the Corporation shall be subordinate to the obligation of the Shareholder to the Lender.

SPTChatsworth007769

10.     The Lender shall have the right to foreclose or otherwise enforce its lien on the Shares and Leases, or to acquire the Shares and Leases by assignment in lieu of foreclosure, and transfer its interest therein as provided for in the agreements between the Lender and the Shareholder or applicable law. The Lender shall have the right to have the Leases and the Shares transferred in the books and records of the Corporation and issued in the Lender's name or the name of its designee without any approval of the Corporation required by the Leases or by-laws. Upon acquisition of the Shares and Leases, the Lender or its Designee, as the case may be, shall have the right to transfer the Shares and Leases without the consent of the Corporation. If requested by the Lender the Corporation agrees to cooperate with the Lender to obtain possession of any of the Apartments after default by the Shareholder. Such cooperation will include eviction and the termination of the Leases and commencement of appropriate legal proceedings by the Corporation provided that the Lender agrees to pay the reasonable fees and disbursements of the Corporation's counsel. If the Shares and Leases are terminated, the Corporation will issue replacement Shares and Leases to Lender.

11.     Nothing herein shall require the Lessee or its designee to take any action, legal or otherwise, against occupants of the Apartments, or any of them for failure to pay rent.

12.     This agreement shall be binding upon the parties and their respective successors and assigns. The Corporation acknowledges that the Lender may transfer, sell or assign its interest in the Loan and its rights thereunder and hereunder. This agreement shall be governed by the laws of the State of New York and may not be modified or amended except by a writing signed by the party to be charged.

13.     To the extent that this agreement contains terms which conflict with the terms of the Leases or the bylaws, the terms of this agreement shall control.

14.     This agreement shall be effective and binding without seal of any party or acknowledgement of any signature.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have executed this Recognition Agreement as of the day and year first above written.

**SHAREHOLDER:**

**HFZ 344 WEST 72ND STREET TWO LLC**, a Delaware limited liability company

By:_____
Name:
Title:

**CORPORATION:**

**CHATSWORTH REALTY CORPORATION,** a New York corporation

By:_____
Name:  Ziel Feldman
Title:   President

[ACKNOWLEDGMENT CONTINUES ON FOLLOWING PAGE]

*Signature Page to Recognition Agreement*

STATE OF _____          )

                    *ss.:*

COUNTY OF _____        )


      On the _____ day of _____ , 201_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                        _____
                        Notary Public


STATE OF _____          )

                    *ss.:*

COUNTY OF _____        )


      On the _____ day of _____ , 201_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


                        _____
                        Notary Public


*Signature Page to Recognition Agreement*

**LENDER:**

**STARWOOD PROPERTY MORTGAGE L.L.C,**
a Delaware limited liability company

By: _____

Name:  Andrew Sossen

Title:   Authorized Signatory

STATE OF _____          )

                    *ss.:*

COUNTY OF _____          )

       On the _____ day of _____ , 201_, before me, the undersigned, a Notary Public in and for said State, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

*Signature Page to Recognition Agreement*

## SCHEDULE A

## LEGAL DESCRIPTION

SPTChatsworth007774

SCHEDULE B

UNITS

SPTChatsworth007775

<u>SCHEDULE C</u>

<u>LEASES</u>

SPTChatsworth007776

## **EXHIBIT D**

**RENT ROLL**

See attached.

21046904-v11

SPTChatsworth007777

9/27/2018 4:55 PM

**Rent Roll with Lease Charges**

HFZ 344 West 72nd Street Owner LLC (chat)

As Of = 9/18/2018

Month Year = 9/2018

| Unit | Unit Type | Unit Resident | Name | Market Charge | Amount | Resident | Other Move In | Lease | Move Out | Balance |
|------|-----------|---------------|------|---------------|--------|----------|---------------|-------|----------|---------|
|      |           | Sq Ft         |      | Rent Code     |        | Deposit  | Deposit       | Expiration |     |         |
| **Current/Notice/Vacant Residents** | | | | | | | | | | |
| 340-03A | 2b2b-cha | 0.00 t0000141 | Kenneth Vaughan | 0.00 rent | 5,240.25 | 0.00 | 0.00 01/01/2012 | 12/31/2018 | | 0.00 |
| | | | | **Total** | **5,240.25** | | | | | |
| 340-04A | 2b2b-cha | 0.00 t0000143 | Randal Vaughan | 0.00 rent | 5,240.25 | 0.00 | 0.00 01/01/2012 | 12/31/2018 | | 0.00 |
| | | | | **Total** | **5,240.25** | | | | | |
| 344-01F | 2b2b-cha | 0.00 t0000155 | Virginia Kallianes | 0.00 mci | 1.56 | 24.01 | 0.00 05/01/1990 | 04/30/2018 | | 0.00 |
| | | | | mci | 12.80 | | | | | |
| | | | | rent | 1,224.59 | | | | | |
| | | | | concess | -61.23 | | | | | |
| | **Total** | | **HFZ 344 West 72nd Street Owner LLC(chat)** | **0.00** | **11,658.22** | **24.01** | **0.00** | | | |

Page 1 of 1

SPTChatsworth007778

# EXHIBIT E

## SPRINGING PLEDGE AND SECURITY AGREEMENT
## IN FAVOR OF SENIOR LENDER

See attached.

21046904-v11

SPTChatsworth007779

## SPRINGING PLEDGE AND SECURITY AGREEMENT
## IN FAVOR OF SENIOR LENDER

THIS SPRINGING PLEDGE AND SECURITY AGREEMENT IN FAVOR OF SENIOR LENDER (this "*Pledge Agreement*"), is made as of _____ ___, 20__, by **HFZ 344 WEST 72ND STREET TWO LLC**, a Delaware limited liability company ("*Pledgor*"), having an address at c/o H F Z CAPITAL GROUP LLC, 600 Madison Avenue, 15th Floor, New York, New York 10022, for the benefit of **STARWOOD PROPERTY MORTGAGE, L.L.C.,** a Delaware limited liability company, as lender (together with its successors and assigns, collectively, "*Senior Lender*") and **STARWOOD PROPERTY MORTGAGE, L.L.C.,** as agent for Senior Lender (as successor-by-assignment from Deutsche Bank Trust Company Americas) (together with its successors and assigns, "*Agent*"), both Senior Lender and Agent having an address at c/o Starwood Property Trust, Inc., 591 West Putman Avenue, Greenwich, CT 06830.

## RECITALS

A.  Starwood Property Mortgage, L.L.C., a Delaware limited liability company ("*Inventory Lender*"), has made a loan in the maximum aggregate amount of up to $130,207,000.00 (the "*Inventory Loan*") to Pledgor pursuant to that certain Inventory Loan Agreement, dated as of the date hereof, between Borrower and Inventory Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Inventory Loan Agreement*"), and evidenced by that certain Inventory Loan Promissory Note in the maximum aggregate amount of up to $130,207,000.00, dated as of the date hereof (the "*Inventory Note*"). The Inventory Loan Agreement, the Inventory Note and any and all other documents which evidence or secure the Inventory Loan are sometimes collectively referred to herein as the "*Inventory Loan Documents*".

B.  Pursuant that certain Loan Agreement, dated as of December 31, 2012, by and between HFZ 344 West 72nd Street LLC, a Delaware limited liability company ("*HFZ*"), Chatsworth Realty Corporation, a New York corporation ("*Corporation*", together with HFZ, "*Senior Borrower*"), and HFZ 344 West 72nd Street Owner LLC, a Delaware limited liability company and then fee owner of the real property located at 340-344 West 72nd Street, New York, New York, 10023, and Senior Lender and Agent, as amended by that certain First Omnibus Amendment to Loan Documents, dated as of January 28, 2016, as further amended by that certain Second Omnibus Amendment to Loan Documents, dated as of March 22, 2017, and as further amended by that certain Third Omnibus Amendment to Loan Documents, of even date herewith (the "*Senior Loan Agreement*", and collectively with any and all other documents which evidence or secure the Senior Loan, the "*Senior Loan Documents*"), Senior Borrower became indebted to Senior Lender with respect to a loan in the initial principal amount of $152,000,000.00 (the "*Senior Loan*"). Terms capitalized but not defined herein shall have the meanings ascribed thereto in the Senior Loan Agreement.

C.  Pursuant to that certain Mezzanine Loan Agreement, dated as of December 31, 2012, by and between Mezzanine Borrower and Starwood Property Mortgage, L.L.C. (as successor-by-assignment to CPUSI SS Securities, LLC), as lender ("*Mezzanine Lender*"), as

21226012-v4

SPTChatsworth007780